Syllabus.

# Richmond.

## Norfolk & Western Railway Company v. Tidewater Railway Company.

March 1, 1906.

1. State Corporation Commission—*Acting Judicially—Hearing Unsworn Witnesses—Establishing Crossing—Harmless Error.*—In determining the necessity for and the propriety of the location of a crossing by one railroad of the track of another, the State Corporation Commission acts in its capacity of a court of record, and cannot hear the unsworn statements of persons called upon by it. If the evidence introduced by the parties leaves the question in doubt, it may call as witnesses other persons, not called by either party, whose evidence it may think will aid it in arriving at a proper conclusion, but such instances are exceptional, and when such persons are called they should be sworn as are witnesses called by the parties. The error, however, in receiving such unsworn statements is not ground for reversal of the action of the Commission, unless the other evidence in the case is not sufficient to support its finding.

2. Railroads — *Crossing Another Road — Insufficient Notice—When Harmless.*—The failure to give sufficient notice under clause 3, sec. 1294b, of Code 1904, relating to the right of one railroad company to cross the track of another, is harmless error, where it appears that the complainant company has sustained no injury therefrom, but has asserted all the rights it could have asserted if a proper notice had been given.

3. State Corporation Commission—*Application to Establish Railroad Crossing—Scope of Powers—Eminent Domain.*—Upon an application to the State Corporation Commission to determine the necessity for and the propriety of a crossing of one railroad by another, no question of taking property, with or without due process, or of condemning the lands of the road to be crossed, or of compensation therefor, can arise. The Commission simply determines the necessity for the proposed crossing and the place where and the manner

in which it is to be made. After this is done, the compensation to be paid is ascertained according to the laws regulating the exercise of the right of eminent domain.

4. State Corporation Commission—*Railroad Crossing Throat of Yard of Another Company at Grade—Grade Crossing.*—Ordinarily one railroad ought not to be permitted to cross the throat of an existing or a proposed yard of another railroad at grade, but where, as in this case, the conditions are exceptional, and the crossing cannot be made elsewhere than at or about the point selected, and it appears from all the facts of the case, including the general character of the country, the various crossing already in existence, the expense and difficulty of erecting an overhead crossing, and the relative dangers and inconvenience to the public of a grade or overhead crossing, that a grade crossing should be allowed, the State Corporation Commission may authorize one railroad company to cross at grade the throat of the yard of another railroad company. A grade crossing is not contrary to the avowed policy of the State where an overhead or underground crossing is not reasonably practicable, and would involve an unreasonable expense under all the circumstances of the case.

Appeal from an order of the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*Jos. I. Doran, Ro. M. Hughes, Lucian H. Cooke* and *Munford, Hunter, Williams & Anderson,* for the appellant.

*E. W. Knight, Walter H. Taylor* and *Thos. Ranson,* for the appellee.

Buchanan, J., delivered the opinion of the court.

This is a proceeding instituted by the Norfolk and Western Railway Company against the Tidewater Railway Company, before the State Corporation Commission, to inquire into the necessity for and the propriety of the location of a crossing

which the latter company desired to make across the works of the former, under the provisions of clause 3, chapter 2, of an act entitled "An act concerning public service corporations," approved January 18, 1904 (Acts 1902-'03-'04, pp. 968, 970-'71), and found in the Code of 1904 as clause 3 of section 1294b.

The action of the State Corporation Commission in permitting W. R. Mayo and Caldwell Hardy, two citizens of Norfolk, a city near the eastern terminus of the appellee road, to appear before it and make statements in reference to matters in issue before the commission, is assigned as error. Neither of these persons was offered as a witness by either litigant and one of them was not sworn.

In hearing and deciding the question in controversy between the litigating railway companies, the commission was acting in its capacity as a court of record, and by the express terms of clause 23 of section 1313a of the Code of 1904 (Acts 1902-'03-'04, pp. 137, 143), it is provided that when so acting the commission shall observe and administer the common and statute law rules of evidence as observed and administered by the courts of this Commonwealth. As the question in controversy in this case was one which not only affected the parties to the litigation, but involved questions of the safety and convenience of a railroad crossing, in which the public were interested, the commission might, under the rules of the common law, have had the right, if the evidence introduced by the parties left it in doubt as to what its judgment should be, to call persons as witnesses not introduced by either party, whom it thought could aid it in reaching a correct conclusion. 2 Elliott on Ev., section 821; *Coulson* v. *Disborough,* 2 Queen's Bench L. R. (1894) 316. Except, however, under very exceptional circumstances there is no necessity for such a course, and when followed the persons called should be sworn as are witnesses called by the parties.

While the commission erred in permitting these citizens to make their statements under the circumstances and in the manner in which they were made, that error furnishes no sufficient ground for reversing the order appealed from, unless the other evidence in the case was not sufficient to support the finding of the commission.

Another error assigned is that the "Commission erred in overruling the objection made by the appellant, to the effect that the notice given to it by the appellee was not a sufficient compliance with the statute, as the evident impression left in the minds of the officers of the appellant road, on whom the alleged notice was served, was that the alleged notice was not final, but merely a starting point for further negotiations."

The record shows that the officials of the two roads had been, prior to the service of the notice in question, endeavoring to agree upon the place where, and the manner in which, the appellee road should cross the works of the appellant, and that they had reached a stage in their negotiations where there was no hope of an amicable settlement of their differences, and that further efforts in that direction would be useless. The notice in question was therefore given, and is a substantial compliance with clause 3 of section 1294b of the Code of 1904, which provides, among other things, that before a railroad or other public service corporation which crosses another commences work upon such crossing the president or general managing officer of the company which proposes to cross the works of another company ,shall submit plans and specifications, appliances and methods of operation to the president or other general officer of the latter company.

While there is some conflict in the testimony as to whether or not the notice was understood to be the commencement of the proceeding required in such cases by clause 3, section 1294b of

the Code, it is clear, we think, from the record that it was so intended by the appellee, and if the appellant did not so understand it when the notice was first served, it did later, and was permitted to assert all the rights it could have asserted if it had complied strictly with clause 3, section 1294b of the Code, and applied to the State Corporation Commission within fifteen days from the date of the notice, to inquire into the necessity of such crossing and the propriety of the proposed location. There is no merit in this contention, as no injury resulted to the appellant from the action complained of.

The appellee, under Rule IX, assigns as cross-error the action of the Corporation Commission in overruling its motion to quash and dismiss the petition of the appellant, because it was not filed within the fifteen days, as provided by the section under which it was filed.

As the result in this case, upon the merits, is favorable to the appellee, as will hereafter be seen, we do not deem it necessary to consider the questions involved in that assignment of error, and do not wish to be understood as in any way expressing any opinion upon them.

The main questions involved in this appeal, as stated by the appellant in the brief of its counsel, are:

"(1) Whether, if the Constitution and statutes of Virginia authorize one railroad company to cross the throat of the yard of another railroad company, that Constitution and those statutes authorize such a crossing without proper condemnation proceedings to acquire the right to cross.

"(2) Whether the crossing of the tracks and yard of one railroad company by another is a taking of property, within the meaning of the constitutional prohibitions against taking property without compensation and without due process of law

"(3) Whether the proper construction of the Constitution and statutes of Virginia authorizes one railroad company to cross the throat of the yard of another railroad company at grade

"(4) Whether, under the circumstances of this particular case, the State Corporation Commission was justified in directing a grade crossing."

The first and second of these questions may be considered together. Neither of them is in our opinion involved in this appeal. The object of this proceeding, as appears from clause 3, section 1294b, of the Code, hereinbefore referred to, was to have the Corporation Commission determine the necessity for the proposed crossing, and the place where and the manner in which it should be made. Until those questions were finally settled, no question of taking property, with or without due process of law, or of condemning the lands of the road whose works were to be crossed, or of compensation therefor, could arise. When the plans, appliances and methods for the crossing are adopted by the Corporation Commission, or, if an appeal be taken from its action, upon the adoption of plans, appliances and methods for the crossing by this court, then it becomes the duty of the company desiring to cross, to make payment of proper compensation therefor before commencing work thereon; and that compensation, by the express terms of the statute under which this proceeding was had, is to be ascertained according to the laws regulating the exercise of the right of eminent domain.

Whether crossing the works of one railroad company by another is "a taking of property" within the meaning of that term under our laws of eminent domain, or what is the measure of compensation in such a case, could not be determined in this proceeding, because the Corporation Commission has no jurisdiction of those questions. Neither could those questions be

settled by the court having jurisdiction thereof until the questions involved in this proceeding were ended, for until that time neither the location nor the character of the crossing would be known.

The next questions raised by the appellant are:

"(3) Whether the proper construction of the Constitution and statutes of Virginia authorizes one railroad company to cross the throat of the yard of another railroad company at grade"; and

"(4) Whether, under the circumstances of this particular case, the State Corporation Commission was justified in directing a crossing at grade."

By section 166 of the Constitution it is provided that "every railroad company shall have the right, subject to such reasonable regulations as may be prescribed by law, to parallel, intersect, connect with, or cross with its roadway, any other railroad or railroads."

Clause 62 of chapter 4 of the "Act concerning public service corporations," approved January 18, 1904, found in the Code of 1904 as clause 62 of section 1294d, provides that "Any railroad corporation created under the laws of this State which shall have fully located its railway, shall have power in the construction of its said railway on such route . . . . to cross any railway or railroad intervening in the manner and upon the terms prescribed by section three of chapter two of this act."

Section 3 of chapter 2 of the act (clause 3 of section 1294b of the Code of 1904) provides, among other things, that "if any railroad, canal, turnpike or other public service corporation deems it necessary in the construction of its works to cross any other railroad, canal, turnpike, or works of any other public service corporation, or any county road, it may do so, provided

such crossing shall be so located, constructed and operated as not to impair, impede or obstruct in any material degree the works and operations of the railroad, canal, turnpike, or other works to be crossed; and provided such crossing shall be supported by such permanent and proper structures and fixtures, and shall be controlled by such customary and approved appliances, methods and regulations as will best secure the safe passage and transportation of persons and property along such crossing, and will not be injurious to the works of the company to be crossed."

This court will not, in this case, undertake to define the extent of the right of one railroad company to cross the works of another, under the foregoing provisions of law, any further than is necessary for a decision of this case. There may be, and no doubt are, many localities on every railroad where another railroad company would not have the right to cross—if for no other reason, because a crossing could not be so located, constructed and operated as not to impair, impede or obstruct in a material degree the works and operations of the other railroad. But what will constitute such a locality must be determined by the facts and circumstances of the particular case in which the question arises. Ordinarily one railroad ought not to be permitted to cross the throat of an existing or a proposed yard of another railroad at grade; but there may be exceptional conditions and circumstances shown in a particular case which will render such a crossing proper.

The Corporation Commission, upon which the primary duty of determining such questions is imposed by the Constitution and statutes of the State, has reached the conclusion, that from the topography of the ground it is manifest that the location selected by the appellee company is practically the only place at or about which a crossing could take place. The commission

further finds, upon all the facts of the case having reference to the general character of the country around Norfolk, to the railroads centering there, the various crossings now in existence, the expense and difficulties involved in erecting an overhead crossing at that place, and the relative dangers and inconveniences to the public likely to follow from the adoption of a grade or overhead crossing, that a grade crossing should be allowed.

It would be impossible, in an opinion of reasonable length, to discuss the mass of testimony taken in this case, and if it could be done it would serve no good purpose, as the facts and circumstances disclosed by this record are not likely to exist in another case involving the same questions. It is sufficient to say that, upon a careful consideration of the whole record, after excluding the statements of Messrs. Mayo and Hardy, which were not admissible in evidence as hereinbefore shown, we are of opinion that the findings of the Corporation Commission are sustained by the weight of evidence.

It was earnestly insisted by counsel for the appellant, both in their briefs and in their oral arguments, that the Corporation Commission, in allowing a grade crossing to be made, had not given due consideration to the declared policy of the State in favor of overhead or underground crossings. (Clause 38, section 1294d, Code of 1904.) The change of the policy of the State from grade to overhead or underground crossings, both as to highways and railroads, is an eminently wise one, and should be given full effect "wherever," in the language of the statute, "it is reasonably practicable and does not involve an unreasonable expense, all the circumstances of the case considered." But to require the establishment of an overhead or underground crossing where it is not reasonably practicable and would involve an unreasonable expense, all the circumstances of the

case considered, would be as much against the policy of the State as to permit a grade crossing where those difficulties are not shown to exist. In reaching our conclusion in this case, we have not been unmindful of the provisions of that statute.

We are of opinion that the order appealed from should be affirmed.

*Affirmed.*