MISSOURI, K. & T. RY. Co. v. RICHARDSON, *Judge, et al.*

No. 1311.   Opinion Filed February 8, 1910.

(106 Pac. 1108.)

1.   **RAILROADS—Authority of Corporation Commission — Railroad Crossing.** The Constitution of the state confers upon the Corporation Commission jurisdiction to determine the necessity for, and the propriety of, a crossing of one railway by another, and the place where and the manner in which it is to be made.

2.   **RAILROADS—Duties of State Corporation Commission — Railroad Crossings—Eminent Domain.** Upon an application to the State Corporation Commission to determine the necessity for, and the propriety of, a crossing of one railroad by another, no question of taking property, with or without due process, or of condemning the lands of the road to be crossed, or of compensation therefor, can arise. The commission simply determines the necessity for the proposed crossing, and the place where and the manner in which it is to be made. After this is done, the compensation to be paid is ascertained according to the laws regulating the exercise of the right of eminent domain.

(Syllabus by the Court.)

Application by the Missouri, Kansas & Texas Railway Company for writ of prohibition to D. A. Richardson, Judge, and others. Rights of the parties determined, and writ denied.

*C. L. Jackson* and *C. G. Hornor,* for plaintiff.—Citing: *A., T. & S. F. Ry. Co. v. Corporation Com. et al.,* 22 Okla. 106, 98 Pac. 330.

*West & Jones, Alexander New,* and *Arthur Miller,* for defendants.

KANE, J.   This is an original proceeding in this court, commenced by the plaintiff, Missouri, Kansas & Texas Railway Company, to prohibit the defendants from proceeding further in a matter that involves the right of the Missouri, Oklahoma & Gulf Railway Company, a railroad corporation organized and existing under and by virtue of the laws of the state of Oklahoma, to cross the tracks of the plaintiff, at the city of Durant, Bryan county,

Okla. It is disclosed by the record that the Missouri, Oklahoma & Gulf Railway Company is now actively engaged in constructing its line of railroad through Johnston, Atoka, and Bryan counties, and has constructed its roadbed through the town of Durant; that its line of railroad as located would intersect the main line of the Missouri, Kansas & Texas Railway Company within the northern limits of said city; that the Missouri, Kansas & Texas Railway Company declined and refused to permit the Missouri, Oklahoma & Gulf Railway Company to intersect and cross its right of way and tracks at said point; that thereupon the Missouri, Oklahoma & Gulf Railway Company filed its petition in the district court of Bryan county, and made its application to Judge D. A. Richardson, judge of the district court of the district in which Bryan county is situated, for the appointment of commissioners to assess the damage sustained by the Missouri, Kansas & Texas Railway Company by reason of the construction of the tracks of the Missouri, Oklahoma & Gulf Railway Company over the right of way and tracks of the Missouri, Kansas & Texas Railway Company, and also determine the point and manner of such crossing. The Missouri, Kansas & Texas Railway Company objected to the appointment of commissioners, upon the ground that the point and manner of crossing should be first determined by the Corporation Commission before the judge of the district court has authority to appoint commissioners to assess the damages sustained by reason of such crossing. This objection was overruled by the court, and after hearing the evidence introduced as to the character of the use for which the property was to be taken, it appointed commissioners, who were ordered to assess the damage sustained by the Missouri, Kansas & Texas Railway Company by reason of the intersection of its right of way and tracks by the tracks and right of way of the Missouri, Oklahoma & Gulf Railway Company, and also determine the point and manner of such crossing. The proceeding was commenced, and was being conducted under that part of section 1022, Wilson's Rev. & Ann. St. 1903, which provides:

"And every corporation whose railroad is or shall be hereafter intersected by any new railroad, shall unite with the owners of such new railroad in forming such intersection and connection and grant the facilities aforesaid; and if the two corporations cannot agree upon the amount of the compensation to be made therefor, or the points and manner of such crossings and connections, the same shall be ascertained and determined in the manner provided by law for the ascertainment and determination of damages for the taking of real property. But no corporation which shall have obtained the right of way and constructed its road at the point of intersection before the application for the appointment of commissioners may be made shall be required to alter the grade or change the location of its road, or be required to bear any part of the expense of making and maintaining such crossings."

The only question arising for this court to decide is whether or not the Constitution or the laws of the state of Oklahoma vest in the Corporation Commission of the state the power and jurisdiction to determine the place or point and the manner one railroad shall cross over the tracks of another, or whether that jurisdiction and authority is vested in the commissioners appointed by the district court of the county wherein the crossing is desired, under the statutory provisions relating to the right of eminent domain by public service corporations, in force in Oklahoma Territory prior to statehood.

It is conceded at the outset that there is inherent danger in railways crossing each other at grade, and that the regulation of such matters falls within the police power of the state, and would be a proper subject for the jurisdiction of the Commission if law can be found placing it there. The law conferring upon the Corporation Commission of this state all the jurisdiction it has is found in the state Constitution. Section 18, art. 9, among other things, provides that:

"The Commission shall have the power and authority and be charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and

preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission, may from time to time, alter or amend. All rates, charges, classifications, rules and regulations adopted, or acted upon, by any such company, inconsistent with those prescribed by the Commission within the scope of its authority, shall be unlawful and void. The Commission shall also have the right, at all times, to inspect the books and papers of all transportation and transmission companies doing business in this state, and to require from such companies, from time to time, special reports and statements, under oath, concerning their business; it shall keep itself fully informed of the physical condition of all the railroads· of the state, as to the manner in which they are operated, with reference to the security and accommodation of the public, and shall, from time to time, make and enforce such requirements, rules and regulations as may be necessary to prevent· unjust or unreasonable discrimination and extortion by any transportation or transmission company in favor of, or against any person, locality, community, connecting line, or kind of traffic, in the matter of car service, train or boat schedule, efficiency of transportation, or transmission, or otherwise, in connection with the public duties of such company."

*A., T. & S. F. Ry. Co. v. Corporation Commission et al.*, 22 Okla. 106, 98 Pac. 330, is a case involving practically the same question presented by the record in the instant case. In that case it was held by this court that:

"The Corporation Commission has jurisdiction to determine the character and kind of crossing which should be made at the point of intersection of these two railways, and to prescribe the plans and specifications necessary to insure the safety and convenience of the general public."

While counsel for defendants attempt to distinguish that case from the one at bar, we see little room for distinction, and no reason for changing the views therein expressed.

The contention of counsel for defendants that the part of the section charging the Corporation Commission "with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in this state and all matters relating to the performance of their public duty" is limited by the language immediately following it, "and their charges therefor," to that class of public duties for which charges are made is untenable. The language last quoted is immediately followed by language conferring the power "of correcting abuses and preventing unjust discrimination and extortion by such companies." If the contention of counsel is sound, and the jurisdiction of the Corporation Commission extends only to prescribing and enforcing against such companies such rates, charges, and classifications of traffic as may be reasonable and just, the power of correcting abuses would be restricted within narrower limits than a fair definition of the phrase imports when construed in connection with the context. And that part of the section empowering the Commission to require such companies to establish and maintain all such public service facilities, and conveniences as may be reasonable and just would have practically no meaning, and the same would also be true of that part which requires the Commission to keep itself fully informed of the physical condition of all railroads of the state as to the manner in which they are operated with reference to the security and accommodation of the public. It is true the section refers with more particularity to the regulation of rates, charges, and classifications than any other subject; but, taking the language of the parts of the section quoted together, and construing it with other language in other sections relating to the same subject, there is apparent an intention on the part of the framers of the Constitution to invest the Commission with jurisdiction over all transportation and transmission companies in all matters relating to the performance of their public duties, and to correct abuses affecting the general public in their intercourse with such companies.

The construction of language similar to that used in our Con-

stitution was involved in *Railroad Commissioners of Texas v. Houston & T. C. R. Co.,* decided by the Supreme Court of Texas, 90 Tex. 340, 38 S. W. 750. The Constitution of Texas (article 10, § 2) provides:

"Railroads heretofore constructed or which may hereafter be constructed in this state are hereby declared public highways and railroad companies common carriers. The Legislature shall pass laws to regulate railroad freight and passenger tariffs, correct abuses, and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this state, and enforce the same by adequate penalties, and to further accomplishment of these objects and purposes may provide and establish all requisite means and agencies invested with such powers as may be deemed adequate and advisable."

The Legislature in carrying into effect the commands of the Constitution used the same language used in the Constitution, and in the same connection. It was claimed that the act of the Legislature related solely to the subject of freight and passenger tariffs. The first and second paragraphs of the syllabus indicate the holding of the court on that question. They are as follows:

"Under Const. art. 10, § 2, giving the Legislature power 'to regulate railroad freight and passenger tariffs, correct abuses, and prevent unjust discrimination and extortion' in rates, the power to correct abuses is not restricted to such as are connected with freight and passenger tariffs. Rev. St. 1895, art. 4562, vesting in the Railroad Commission power to regulate freight and passenger tariffs, to correct abuses, and to prevent unjust discrimination and extortion in rates, and article 4579, making it the duty of the Commission to investigate complaints against railroad companies, and to enforce all laws in reference to railroads, are an express delegation to the Commission of power to correct abuses defined by the laws regulating railroads, irrespective of their connection with the subject of tariffs."

Mr. Justice Brown, who delivered the opinion of the court, in discussing this feature of the case, used the following language:

"The appellee contends for a construction of the language of the Constitution which would be stated thus: 'The Legislature shall pass laws to correct abuses in the rates of freight and pas-

senger tariffs on the different railroads in this state.' And it is urged that any other construction leaves the power 'to correct abuses' unlimited, and it may be applied in any character of abuses. The section of the Constitution has but one subject, which is railroads as highways operated by railway companies as common carriers, and its language must be construed as limited to that subject. The language 'to correct abuses' is qualified by the phrase 'on the different railroads in this state.' The intention embodied in the section of the Constitution is fairly expressed by the following analysis of its provisions: The Legislature shall pass laws to regulate railroad freight and passenger tariffs on the different railroads in this state, etc. The Legislature shall pass laws to correct abuses on the different railroads in this state, etc. The Legislature shall pass laws to prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this state," etc.

Defining the word "abuses," Judge Brown uses the following language:

"The word 'abuses,' as used in this amendment, means 'any improper use of a right or a privilege, as abuse of a franchise.' Standard Dict., word 'Abuse'; *Railroad Co. v. Casey,* 26 Pa. 318. The language 'the Legislature shall pass laws to correct abuses' is competent to express a command to the legislative department to pass laws for the correction of all abuses or improper uses of the franchise which had been granted, or might be granted the railroads in this state, as well as all abuses connected with or growing out of business transacted in the exercise of such franchise. The conclusion that the Legislature and the people intended, by the use of this language, to direct the general control of the public highways and common carriers of the state, and to prevent their abuse of the privileges and franchises conferred upon them, we think justified by the consideration of the subject, and the necessities and circumstances which produced this action on the part of the people. To have confined the constitutional amendment to one character of abuse, and to have limited the means of control to one subject out of the many embraced within the general range of the authority to control these highways, we think inconsistent with true statesmanship, and would have fallen short of an adequate provision to protect the interest of the public."

It is further contended by counsel for defendant that, if by any inference it may be held section 18, *supra*, confers jurisdiction upon the Corporation Commission as contended for by plaintiff, that section is undoubtedly curtailed of its meaning on this particular question by section 27 of the same article which provides:

"In case any railroad company shall hereafter seek to cross at grade with its track or tracks, the track or tracks of another railroad, the railroad seeking to cross at grade within a reasonable time, shall be compelled to interlock or protect such crossings by safety devices to be designated by the Commission, and all costs of appliance, together with the expenses of putting them in, shall be borne equally by each company: Provided, that this act shall not apply to crossings of side tracks."

We cannot agree with counsel. To our mind, section 27 rather supports the contention that it was the intention of the Constitutional Convention to confer on the Corporation Commission jurisdiction over controversies between railroads seeking to cross each other's tracks, as it would seem to indicate that in the judgment of the framers of the Constitution the public was not only entitled to have such crossings at a safe and convenient place, but also that such crossings should be protected by safety devices to be designated by the Commission. We are therefore of the opinion that the district court, in so far as it seeks to empower its commissioners to designate the place where this crossing should be put and the manner of its construction, is without jurisdiction to act. This, however, does not oust the court of all jurisdiction. While the Constitution confers upon the Commission jurisdiction to determine the necessity for the place where, and manner, one railway may cross another, the commissioners appointed by the district court have the power to determine the compensation to be paid by the railway seeking the right or privilege of crossing the tracks of another.

"Upon an application to the State Corporation Commission to determine the necessity for and the propriety of a crossing of one railroad by another, no question of taking property, with or without due process, or of condemning the lands of the road to be

crossed, or of compensation therefor, can arise. The Commission simply determines the necessity for the proposed crossing, and the place where and the manner in which it is to be made. Aftei this is done, the compensation to be paid is ascertained according to the laws regulating the exercise of the right of eminent domain." (*N. & W. R. Co. v. Tidewater R. Co.*, 105 Va. 129, 52 S. E. 852.)

As the parties to this proceeding state in their briefs that their only concern is to have their respective rights definitely settled, it will not be necessary to issue any further order herein, unless upon subsequent showing it may appear that such an order is necessary to protect the rights of the parties as herein determined.

Dunn, C. J., and Hayes and Turner, JJ., concur; Williams, J.. not participating.