Syllabus.

# Richmond.

## TRIPLETT v. FAUVER AND OTHERS.

### November 23, 1904.

1 .CORPORATIONS—*Directors' Meeting—Personal Interest of Director.*—Where only three out of five directors of a corporation are present at a meeting of the board, they cannot determine a matter in which one of them is personally interested otherwise than as a stockholder. As to such matters the board is without a quorum, and its action is invalid. Code, Sec. 1122.

2. LEASE—*Option to Continue—Case in Judgment.*—The President and General Manager of a company, having leased its property for one year, with the privilege of continuing the lease four years longer, and having taken possession of the property under the contract and remained in undisputed control thereof until the institution of this suit, which was more than two years after the date of the lease, without any meeting of the stockholders or directors in the meantime, and without giving notice of any kind to the lessor of an intention to surrender the lease, was properly held to have exercised his privilege in favor of continuing the lease after the expiration of the first year.

3. EQUITY PLEADING—*Suit to Wind Up Corporation—Order of Reference—Claims for Expenses—Case in Judgment.*—A bill filed, in conformity with the statute, to wind up an unprofitable corporation, charges that the company's property is being operated and managed by the company. There was no demurrer to the bill. The company's property was sold by consent, and a consent order of reference was made in order to ascertain the liabilities of the company. Under this order, the President and General Manager preferred a large claim for the expense of running the company for some time prior to the institution of the suit. This was opposed on the ground that he was, during this time, lessee of the

property, and the debt was his personal debt and not a debt of the company. The trial court having so held, objection is made in this court that under the pleadings, alleging that the property was operated and managed by the company, the trial court erred in' allowing complainants to claim that the property was under lease.

*Held:* The objection is without merit. The President and General Manager was in the attitude of a plaintiff asserting a claim against the company under an order of reference to which he had consented, and the complainants had the right to resist its correctness. They could not have anticipated that such a claim would be preferred, nor be expected to allege in their bill facts as the basis of defense of a claim of which they were ignorant.

4. CORPORATIONS—*Compensation of President and Directors.*—One who is President and a Director in a company cannot claim extra compensation for services in closing out the stock and settling up the accounts of the company, unless it is allowed by the stockholders. Code, Sec. 1119.

5. CORPORATIONS—*Endorsement of Note—Ultra Vires Acts—Case in Judgment.*—Upon the evidence in this cause it is clear that the substitution by the president of a company of its name as endorser, instead of his own, on a note for which it was, in its inception, in no way liable, was without consideration to the company, without authority from it, *ultra vires,* and therefore void.

Appeal from a decree of the Corporation Court of the city of Staunton, pronounced in a suit in chancery, wherein the appellee, Fauver, and others were the complainants, and the appellant and others were the defendants

*Affirmed.*

The opinion states the case.

*Patrick & Gordon,* for the appellant.

*Elder & Elder* and *J., J. L., & R. Bumgardner,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The bill in this cause was filed by a large minority of the stockholders of the Staunton Milling Company, under an act approved February 16, 1901, entitled "An act to provide for winding up abandoned, insolvent or unprofitable corporations at the suit of stockholders."

The allegations are that the principal purpose for which the company was formed, namely, the manufacture of flour, had failed; that the company had become insolvent; that its assets were being consumed in expenses, without benefit or probable benefit to the stockholders; and that its affairs were being grossly mismanaged by those holding or controlling a majority of its stock. The prayer is that the company may be wound up, its just debts paid, and any surplus remaining distributed among the several stockholders. To this end a receiver was asked for to take charge of the property and preserve and manage the same until the indebtedness was ascertained and the assets reduced to money. The company and the majority stockholders were made parties defendant.

Upon the filing of this bill, the parties plaintiffs and defendants, by their counsel, entered into an agreement in writing providing for a sale at once of the real estate of the company, and for a distribution of all of its assets, under the orders of the court, according to the rights of those interested therein. This agreement was made the basis of a consent decree appointing commissioners to sell the real estate and manufacturing plant of the company, without waiting for an ascertainment of its indebtedness; and referring the cause to a commissioner to ascertain and report upon the assets and liabilities of the company.

Under this decree the sale ordered was made within a few weeks, at $18,000.00, and confirmed without objection. It ap-

pears from the record that the capital stock of the Staunton Milling Company was divided into sixty shares of the par value of $500.00 per share. Of these the appellant owned twenty-eight; his brother, L. Triplett, two, and J. Cox one, aggregating thirty-one shares, one more than half of the whole. These three shareholders are known throughout the record as the "majority stockholders." The remaining twenty-nine shares were owned by the appellees, J. A. Fauver and others, known as the "minority stockholders."

For some years prior to the institution of this suit, there was great lack of harmony between those owning the thirty-one shares, and those owning the twenty-nine shares; the latter, on account of the constantly failing condition of the company, insisting that its affairs should be wound up, and the company retired from business, while the majority stockholders held to and carried out a contrary view. This condition of affairs continued, the business of the company going from bad to worse each year, until May 2, 1899, when a meeting was held, at which all the stockholders were present in person or by proxy, and it was unanimously resolved to accept a proposition then submitted on behalf of the appellant, J. I. Triplett, providing for a lease of the property to him. The proper officers of the company were empowered to carry out the arrangement and understanding of the meeting with respect to this lease. The minutes of this meeting and the contract in writing, which was executed by the appellant, show that the lease was for one year from July 1, 1899, with the privilege to the lessee of continuing the same four years longer, in consideration of $1,500.00 *per annum*, payable to the company in semi-annual instalments on the first days of January and July in each year. The lessee continued in possession of the property under this contract from its date until the institution of this suit on the 15th day of July, 1901.

Some question is made that the lease did not continue but one year; that the appellant, after the expiration of the first year, resumed his old relation to the company of president, and general manager, and conducted the business on behalf of, and at the cost of, the Staunton Milling Company, and not at his own risk and charge as lessee; that this view of his relation to the company was ratified and approved by a meeting of the Board of Directors, held July 16, 1901.

The record shows that the appellant took possession of the property under his contract of lease and remained in undisputed control thereunder up to the institution of this suit, without in the meantime a meeting of either stockholders or directors being held, and without notice of any sort to the lessor of any purpose on his part to surrender the lease. The facts appearing of record make it clear that the appellant was properly held to have exercised his privilege in favor of continuing the lease after the expiration of the first year. The so-called meeting of directors of July 16, 1901, was held more than two years after the lease was made, and was composed of the three majority stockholders. Every act of this meeting was in the interest of the appellant, the object being to relieve him of the expenses occasioned by the operation of the mill from July 1, 1900, to July 16, 1901.

The Code, sec. 1122, provides "that no member of a board shall vote on a question in which he is personally interested otherwise than as a stockholder."

The meeting under consideration being constituted, as it was, of three out of five directors, and J. I. Triplett being vitally interested otherwise than as a stockholder in the matters to be determined, he could not vote, and the meeting was left without a quorum for the transaction of business. It was therefore properly held that the acts of this meeting were invalid, and of no binding force upon any one.

It further appears from the record that, under the order of reference, the appellant filed a statement asserting an indebtedness in his favor against the company of $7,452.71. This claim was based largely, if not entirely, upon the idea that appellant, after July 1, 1900, was running the mill for the company, and not for himself, as lessee. The appellees contended that appellant was operating the mill as lessee, and that as such he and not the company was responsible for the losses incident to such operation, and that a settlement upon this basis would exonerate the company from all liability upon the claim asserted by him.

The lower court having held adversely to appellant, his first assignment of error is to its action, "in allowing complainants, under the pleadings in this cause, to claim that the plant was under lease, and to set up a claim for rent, instead of holding, as the bill alleged, that the property was being operated and managed by the company. If complainants had alleged in their bill the case now insisted on and set out by the court in its opinions, the bill would have been dismissed." The contention seems to be that this is not a proper suit in which to determine the relation of appellant to the Staunton Milling Company after July 1, 1900; that because the bill did not allege that appellant was holding as lessee, the complainants cannot now defend the claim asserted, upon the ground that it was made up of losses incurred by him as lessee, and for which he alone was responsible. The bill was filed to wind up an unprofitable corporation, and its allegations are in conformity with the provisions of the act under which the proceeding was instituted. It was not demurred to, and no objection was made to the sale of the property or the order of reference calling for a report of debts. It is difficult to understand how the complainants could have been expected to anticipate that the appellant would set up against the company a large claim; or be ex-

pected to allege, in such a bill, facts as a basis for defending a claim they had no reason to suppose existed. So far as the claim of appellant is concerned, he is in the attitude of plaintiff asserting an indebtedness against the company, before a commissioner, charged with the duty of auditing just and proper claims. It is always permissible, under such circumstances, for those interested to show that the claim is, for any reason, not valid, and should not be audited. The whole subject of appellant's relation of lessee to the company has been brought to the front, not by the appellees, but by appellant's assertion against the company of a claim that necessarily involved an inquiry into that subject. It would be a denial of justice to sustain the contention of appellant and to allow his claim to be audited notwithstanding the adequate and complete defense made thereto before the commissioner.

The second assignment of error is to the action of the court in holding that appellant was responsible for the amount expended on the property during the year 1900. This objection relates to the refusal of the court to allow appellant credit for repairs put by him upon the mill during the year commencing July 1, 1900, and ending July 1, 1901.

As already seen, appellant was during that year the lessee of the property, and under the express terms of the lease he was to make all repairs. The clause to that effect is as follows: "It being expressly understood that J. I. Triplett is to make all necessary repairs for putting the plant in shape for starting up, and be at all expense in keeping it in repair and turn the property over to the company at the end of the lease, in as good condition as when received, ordinary wear and tear excepted, the lessee to pay the water tax." Under this contract it is perfectly clear that the court did not err in holding that appellant was not entitled to recover against the company his claim

for repairs put upon the property during the time it was in his hands as lessee.

The third assignment of error is to the action of the court in not allowing appellant the sum of $357.00, charged by him for closing out the business of the company.

At the meeting of the stockholders held May 2, 1899, the appellant was directed to close out the stock on hand, settle up outstanding accounts, and report his transactions at the close of the business year, which was July 1, 1899. He was at that time president, director, and general manager of the company, and being paid a salary for his services. The stockholders did not then and have not since made any special allowance to him for the work of closing up the business, as directed. Section 1119 of the Code provides that "there shall be no compensation for services rendered by the president or any director, unless it be allowed by the stockholders." Under this statute, the stockholders not having allowed this claim for compensation, it was properly rejected by the court.

The fourth and last assignment of error is to the action of the court in holding that the Catt & Wilson note was an individual liability of appellant and not a debt of the company.

The evidence shows that Catt & Wilson owed the Staunton Milling Company a balance of $1,500.00 on their stock subscription to the company. For the purpose of discharging this indebtedness, Catt executed his negotiable note for $1,500.00, payable to and endorsed by Wilson. This note was discounted by the Bank of Mount Jackson, at the request and upon the endorsement of J. I. Triplett, the appellant, and the proceeds was used to pay the balance due on the stock subscription of Catt & Wilson. The Staunton Milling Company did not endorse, nor did it have anything to do with this transaction. This note was curtailed from time to time by Catt & Wilson, until it was reduced about one-half. At some time prior to the

Opinion.

last renewal, the appellant substituted for his personal endorsement on the note the endorsement of the company, as follows: "J. I. Triplett, Pres. Staunton Milling Co." When the note became due, Catt & Wilson having failed, it was taken up by appellant and by him charged up against the company on its books.

It is clear from the evidence that in the inception of this transaction the company was in no way liable, and it is equally clear that the act of the appellant, in attempting to make the company liable by substituting it as endorser in the place of his individual endorsement, was without consideration to the company, without authority from the company, *ultra vires,* and therefore void. The note was the individual liability of the appellant, and the action of the lower court in disallowing it as a claim against the company was plainly right.

Upon the whole case, we are of opinion that there is no error in the decree complained of, and it must be affirmed.

*Affirmed.*