# Richmond.

## HOLSTEIN-HARVEY-KIRK COMPANY, INC., v. H. KIRK & SONS, INC.

### March 22, 1928.

### Absent, Burks, J.

1. PLEADING—*Plea of Non Est Factum and Plea of Set-Off and Counter-claim—Right to Separate Trial on Plea of Non Est Factum—Case at Bar.*—The instant case was a proceeding by attachment. Defendant corporation had given a note executed by its secretary and treasurer for the amount in question and filed a plea of set-off and counterclaim. When the case came on for trial defendant filed also a plea of *non est factum.* Defendant claimed that it was entitled to a separate trial on its plea of *non est factum.* This the trial court denied.

   *Held:* That there was no error in the court's action, as it would have been contrary to Virginia practice to grant the separate trial on the plea of *non est factum.* If it had been permitted and had resulted favorably to the plaintiff, it would have necessitated another trial on the counterclaim which had been filed.

2. PLEADING—*Inconsistent Pleas—Separate Trials.*—The Virginia statute permits several inconsistent pleas to be filed at the same time, but this does not force the court to have separate trials upon each plea involved, however anxious a defendant who files such inconsistent pleas may be to have separate trials. It is still a single action, and however many issues there may be, they are generally all tried together and submitted to the same jury.

3. CORPORATIONS—*Officers of Corporations—Power to Execute Notes—Instructions—Case at Bar.*—The instant case was a proceeding by attachment. Defendant corporation had given a note executed by its treasurer and secretary to plaintiff corporation and claimed that the execution of the notes was *ultra vires.* The court instructed the jury that although they might believe from the evidence that the by-laws of the defendant corporation provided that the president should execute note, yet if they further believed that the treasurer and secretary believed that they had authority to execute the note sued on, that they acted in good faith in executing the same, and that plaintiff believed that they had authority to sign the note,

and that if they further believed that the secretary was practically in charge of the business of defendant corporation, and that the sum represented by the note was justly due by the defendant corporation, and that all parties to the transaction acted in good faith, they should find for the plaintiff. It appeared from the evidence that the secretary of the corporation appeared to be in full charge of the affairs of the corporation.

*Held:* That under the facts of the case there was no error in this instruction.

4. CORPORATIONS—*Officers of Corporations—Knowledge of Their Authority—Power to Execute Notes—Instructions—Case at Bar.*—In the instant case, a proceeding against a corporation by attachment, the court instructed the jury that if they believed a note executed by defendant corporation to plaintiff corporation by the secretary and treasurer of defendant corporation was executed in good faith, all the parties believing that the secretary and treasurer had authority to sign the note and that the secretary was practically in charge of the business of the corporation, and that the sum was justly due, they should find for the plaintiff. It was urged by defendant that it was improper to allow the jury to take into consideration the good faith of the parties, or what the officers of the company believed about their authority, and that they must all be charged, as a matter of law, with knowledge of their actual authority. While defendant corporation had a board of directors, they never met. The entire management of the corporation was entrusted to the officers executing the note.

*Held:* That however sound the proposition might be that the officers of the corporation must be charged, as a matter of law, with knowledge of their actual authority, it had little application to the instant case.

5. AGENCY—*Authority of Agent—Ratification by Principal—Principal Accepting Benefits of Transaction—Disavowal by Principal.*—An act of an agent, from which the agent derives no personal benefit, but which is done in good faith for the benefit of his principal, and which was apparently necessary and would redound to his advantage, will be held to have been ratified or acquiesced in, and thereby rendered valid, upon slight evidence. If the principal knows that an agent has transcended his authority, he must promptly disavow the act or he makes it his own.

6. AGENCY—*Authority of Agent—Ratification by Principal—Principal Accepting Benefits of Transaction—Disavowal by Principal—Case at Bar.*—The instant case was a proceeding by attachment. Defendant corporation had given plaintiff corporation a note executed by its secretary and treasurer. The officers who executed the note had been in sole charge of the business for six months. The act was done

in good faith; it was done for the benefit of the principal; it redounded to the principal's advantage; and the acquiescence of defendant corporation and the acceptance of the benefits made the ratification by defendant corporation of the acts of its officers quite apparent.

*Held:* That defendant corporation was liable.

7. CORPORATIONS—*Power of President of Corporation—Purchase of Another Corporation—Ratification of President's Act by Corporation Accepting Benefits—Case at Bar.*—The instant case was an action by plaintiff corporation against defendant corporation to recover the balance due the plaintiff corporation on the purchase of its business by defendant corporation. One H., who represented himself as president and owning the controlling interest in a third corporation, made the offer on behalf of this third corporation, but upon his suggestion, when the sale was made, a new company, the defendant, was formed and became the purchaser. The third corporation, of which H. was president, owned the controlling interest in defendant corporation. The new company, after its organization, asserted title to the goods of plaintiff, collected fire insurance thereon, appropriated the property to its own use, and repeatedly acknowledged its indebtedness to the plaintiff.

*Held:* That whatever the original authority of H. to make the purchase and organize the new corporation may have been, the defendant corporation was estopped from denying the validity of the contract of which it had received all the benefits.

8. CORPORATIONS—*Authority of Manager of Corporation—Character Assumed by Manager—Estoppel to Deny Authority.*—There are so-called corporations which for all practical purposes, when they do business, cannot be reached at all if we are not permitted to treat the only known or accessible embodiment in any other way than according to the character the manager may see fit for the occasion to assume. He is possessed of full authority to talk and act when there is anything to be gained, but he is not the proper man to talk or act when there is anything to be lost; and yet the principal, for all practical purposes, if not often in reality, is represented in no other way except by a name, so that a species of legerdemain is carried on, "now you see it, and now you don't." The true principles of evidence and agency are not so narrow or so rigid that they may not be made to reach such cases.

9. CORPORATIONS—*Authority of Officers—Execution of Notes—Note Invalid but Debt Clearly Due—Case at Bar.*—The instant case was a proceeding by attachment. Defendant corporation had given a note to plaintiff corporation which it claimed was invalid because executed by secretary and treasurer of defendant corporation without authority. Under the evidence in the case, even if the note were invalid,

the debt asserted was clearly due by defendant corporation, and had been contracted for its benefit by those entrusted with the management of its business.

*Held:* That a recovery by plaintiff could not be set aside.

10. CORPORATIONS—*Should Act by Directors—Accepting Benefit of Irregular Contract.*—Although a corporation ought to act through its board of directors, and in accordance with its charter limitations, yet if it declines to do so, it cannot be permitted to accept the benefits of irregular contracts without assuming all of its consequential liabilities thereunder.

11. VERDICT—*Interest.*—When a jury finds a verdict without specifying that it bears interest from a particular date, the judgment should be entered for the amount so found with interest from the date of the verdict.

12. VERDICT—*Interest—Case at Bar.*—In the instant case the jury found the following verdict: "We, the jury, on the issue joined, find for the plaintiff in the sum of $7,500.00, with interest, less $275.14 with interest."

*Held:* That it was perfectly apparent that the jury intended to find for the interest also. The record made the date from which interest should be computed perfectly apparent, and the Supreme Court of Appeals entered judgment accordingly for the interest from that date.

Error to a judgment of the Corporation Court of the city of Alexandria, in a proceeding by attachment. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Charles Henry Smith* and *John Barton Phillips*, for the plaintiff in error.

*Gardner L. Boothe* and *Albert V. Bryan*, for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

H. Kirk & Sons, Incorporated, hereinafter sometimes called plaintiff, has recovered a judgment against

Holstein-Harvey-Kirk Company, Incorporated, hereinafter sometimes called defendant. The proceeding was by attachment, and there was a jury trial. The defendant is here assigning error.

There are some conflicts in the testimony which seem to us inconsequential. The outstanding facts upon which the verdict and judgment are based may be thus summarized:

H. Kirk & Sons, Incorporated, had conducted a wholesale grocery business in the city of Alexandria, Virginia, for many years, with Orlando H. Kirk as treasurer and general manager, and Harry D. Kirk as secretary. In the early part of the summer of 1925, Morton Harvey made a proposition to the plaintiff to purchase its business. Harvey represented himself as making the offer on behalf of Holstein-Harvey National Company of Wilmington, Delaware, in which company he (Harvey) owned a controlling interest. The Kirks were at first disinclined to sell, but finally, as the result of negotiation, the sale was made, and upon Harvey's suggestion a new company, the defendant, Holstein-Harvey-Kirk Company, Incorporated, was formed and became the purchaser. The Delaware corporation, of which Harvey was president, owned a controlling interest in the defendant corporation. An inventory of the assets was taken by employees brought to Alexandria by Harvey for that purpose, assisted by some of the employees of H. Kirk & Sons, Incorporated, the plaintiff. This inventory was kept in the office safe to which Harvey had access at all times, and he gave instructions from time to time as to selling certain goods embraced in the inventory for which the sales were slow. The officers of the new company, the defendant (the vendee), were the same, Orlando H. Kirk as president, and Harry D. Kirk as secretary and

treasurer, who were the apparent owners of the stock and business of H. Kirk & Sons, Incorporated, the vendor. The only person with whom the plaintiff had any negotiation was Harvey, and after the new company took charge he examined the inventory on several occasions and never objected to it until this proceeding had been commenced.

This sale and transfer were closed in August, 1925, and thereafter, until December 26, 1925, the business was carried on in the name of and for the defendant, the new company, acting solely through the two Kirks, officials, and Morton Harvey, director, as the representatives of the owners of the stock of the new company. A fire occurred on December 26, 1925, which destroyed the entire stock of merchandise, and settlement was made with the fire insurance companies upon the basis of the inventory referred to, and the resulting funds paid to the defendant corporation.

On January 16, 1926, a few weeks thereafter, the two Kirks indicated their purpose to withdraw from the defendant corporation, and requested payment of the balance of the purchase money due for the stock and business to H. Kirk & Sons, Incorporated, the plaintiff. The new company had, after the settlement with the insurers, cash enough to pay every debt due by the defendant company, including that due their vendor, H. Kirk & Sons, Incorporated, and the Kirks were about to draw checks for the plaintiff just as had been drawn in favor of every other creditor of the defendant when Harvey told them that if all of the money should be so disbursed it would embarrass the defendant company in its future operations; whereupon the Kirks waived their immediate demand for a full settlement and accepted a note for $9,145.00 as representing the balance due the plaintiff, H. Kirk & Sons, Incorporated.

At the time this note was executed an agreement was entered into in the names of the vendor company, plaintiff, and the vendee company, defendant, which was ratified and approved in writing by Harvey as president of the Holstein-Harvey National Company, Incorporated, and as director of the defendant, Holstein-Harvey-Kirk Company, Incorporated. After the execution of this agreement, the payment of $20,000.00 in cash and the delivery of this note for $9,145.00, dated January 16, 1926, and payable to H. Kirk & Sons, Incorporated, six months after date, with interest at six per cent, the two Kirks, one president and the other secretary of the defendant company, resigned. The entire business was then relinquished by them and their control absolutely ceased. After this settlement, a Mr. Moore, as secretary, appeared to be in full charge of it. This note was signed by O. H. Kirk, as president, and Harry D. Kirk, as secretary, of the defendant company.

When this first note matured, six months after the Kirks had ceased to have any connection whatever with the business of the defendant company, Hellmuth, the then treasurer of the defendant company, came to see Orlando H. Kirk and told him that they could not pay the note and they wanted to get an extension of it, or to curtail it and get an extension of the balance. He said that the defendant company would have the amount in about sixty days. As the result of their exchange of views, a curtail of a little over $1,500.00 was paid and a new note in renewal was executed by Raymond Hellmuth, as treasurer, and Frank D. Moore, as secretary, for $7,500.00 which matured August 2, 1926, and not having been paid, this proceeding was instituted. The persons whose names have been mentioned are all who appear to have taken any part in

the transactions or business of the defendant company after the sale, either before the fire or thereafter.

The by-laws of the defendant corporation did not authorize the secretary and treasurer to execute notes, nor have they been expressly authorized so to do by the directors at any meeting.    Indeed, there was no meeting of the board of directors from the time of the resignation of the Kirks in January, 1926, until August 19, 1926, two weeks after the attachment was issued. The same officials of the defendant company who had executed the disputed note for $7,500.00 also executed the attachment bond for the release of certain moneys in the Alexandria National Bank, which had been attached by the plaintiff.

By way of defense, there was a plea of set-off, and certain counter-claims were filed.    When the case came on for trial, October 16, 1927, the defendant filed its plea of *non est factum,* repudiating the note, and averring that the secretary and treasurer were without authority to execute it.

The verdict and judgment are for $7,500.00 with interest, less a credit of $275.14.

So far as we grasp the case, the chief ground here urged for reversal of the judgment by the defendant company is that the execution of the note was *ultra vires.*

[1, 2] Referring now to the specific assignments of error, we find that the defendant urged that it was entitled to a separate trial on its plea of *non est factum.* This the court denied.

This would certainly have been contrary to our practice.    If it had been permitted and had resulted favorably to the plaintiff, it would have necessitated another trial as to the counter-claims which had been filed.    Our statute permits several inconsistent pleas

to be filed at the same time, but this does not force the court to have separate trials upon each plea involved, however anxious a defendant who files such inconsistent pleas may be to have separate trials. It is still a single action, and however many issues there may be, they are generally all tried together and submitted to the same jury. A discussion of the statute in *Norfolk Hosiery Co.* v. *Aetna Co.*, 124 Va. 221, 98 S. E. 43, is instructive.

[3] The second assignment complains of an instruction, which reads: "The court instructs the jury that although they may believe from the evidence that the by-laws of Holstein-Harvey-Kirk Company provided that the president should execute notes, yet if they further believe from the evidence that the treasurer and secretary believed that they had authority to execute the note sued on in this case, that they acted in good faith in executing the same, and that H. Kirk & Sons Company, Incorporated, believed that the said secretary and treasurer had authority to sign the said note and if they further believe that the said secretary was practically in charge of business of the said Holstein-Harvey-Kirk Company, in the city of Alexandria, and that the sum represented by the said note was justly due by the Holstein-Harvey-Kirk Company to H. Kirk & Sons, Incorporated, and that all parties to the transaction acted in good faith in giving and receiving said note, that then the jury shall find for the plaintiff for the amount of said note with interest thereon subject to a set-off of $275.14 and such other set-offs, if any, as they believe from the evidence the defendant may be entitled to."

[4] The chief complaint seems to be that under the facts of this case it was improper to allow the jury to take into consideration the good faith of the parties,

or what the officers of the company believed about their authority, and that they must all be charged, as a matter of law, with knowledge of their actual authority.

However sound this proposition may be, it has little application to this case. Here was a corporation which, while it had a board of directors, they never met. It had other officials, but the entire management of the business was entrusted to these officers, and unless they had acted for the company its business would have ceased, for there was no one else who was acting.

In *Union Bank & Trust Co.* v. *Long Pole Lumber Co.*, 70 W. Va. 558, 74 S. E. 674, 41 L. R. A. (N. S.) 663, these facts appear: The president of the defendant corporation had entire management and control of the company's office and conducted its business generally. He resigned as president June 9, 1908, but a few days thereafter, before notice of his resignation had been given to the plaintiff, he endorsed, in the name of the company, a note given to it by certain creditors in renewal of other notes then held by the defendant company. The president then gave this endorsed note to the plaintiff bank in exchange for certain notes of the defendant company held by the plaintiff. The by-laws of the company did not authorize the president to endorse promissory notes for the corporation. In an action by the bank against the endorsing company, the defendant company was held liable on the endorsement. In the opinion this is stated: "The issue involves not so much the authority actually conferred upon the president, as that which he apparently had and exercised with the knowledge and consent or acquiescence of the board of directors. In other words, the inquiry goes to the extent of the power he was

permitted to exercise, rather than the extent of the power actually conferred. The law does not sustain the view that one dealing with a corporation through its officers must, under all circumstances, go to its by-laws as the exclusive evidence of his authority."

[5] In *Winston* v. *Gordon*, 115 Va. 907, 80 S. E. 756, the rule is thus stated: "It is well settled, and is agreeable to reason, that an act of an agent, from which the agent derives no personal benefit, but which is done in good faith for the benefit of his principal, and which was apparently necessary and would redound to his advantage, will be held to have been ratified or acquiesced in, and be thereby rendered valid upon slight evidence. If the principal knows that an agent has transcended his authority, he must promptly disavow the act or he makes it his own." *Kelsey* v. *National Bank*, 69 Pa. St. 426.

[6] The officers who executed this $7,500.00 note had been in sole charge of the business for six months, and tested by the rule just stated the instruction is unobjectionable. The act was done in good faith; it was done for the benefit of the principal; it redounded to the principal's advantage; and the acquiescence and acceptance of the benefits makes this ratification quite apparent.

[7] The third assignment questions the validity of the original sale from the plaintiff to the defendant company. The facts speak so loudly that little need be said about this. Whatever the original authority of Morton Harvey to purchase the goods, to organize and participate in the business of the new company, the fact is that the new company, after its organization, asserted title to the goods, collected the insurance thereon, appropriated the property to its own use, and repeatedly acknowledged its indebtedness to the plain-

tiff.   Certainly, under these circumstances, it is estopped from denying the validity of the contract of which it has received all the benefits.

[8] The case calls for a repetition of what was said in *Am. B. H. O. S. Mach. Co.* v. *Burlach*, 35 W. Va. 661, 14 S. E. 323, which has been recently quoted by West, J., in *Haynes Chem. Corp.* v. *Staples & Staples, Inc.*, 133 Va. 92, 112 S. E. 806: "We cannot close our eyes to the fact that there are so-called corporations which for all practical purposes, when they do business, cannot be reached at all if we are not permitted to treat the only known or accessible embodiment in any other way than according to the character the manager may see fit for the occasion to assume.   He is possessed of full authority to talk and act when there is anything to be gained, but he is not the proper man to talk or act when there is anything to be lost; and yet the principal, for all practical purposes, if not often in reality, is represented in no other way except by a name, so that a species of legerdemain is carried on, 'now you see it, and now you don't.'   The ordinary business world is becoming tired with, if not vexed at, this sort of jugglery, and thinks that the true principles of evidence and of agency are not so narrow or so rigid that they may not be made to reach such cases."

[9, 10] Under the evidence in this case, even if the note were invalid, the debt asserted is clearly due by the defendant corporation, and has been contracted for its benefit by those entrusted with the management of its business.   To relieve the defendant from liability would be to close the eyes to the realities.   A corporation ought to act through its board of directors, and in accordance with its charter limitations, but if it declines to do so, it cannot be permitted to accept the benefits of irregular contracts without assuming all of its consequential liabilities thereunder.

The case has been correctly decided.

There is another question raised as to the verdict. It reads: "We, the jury, on the issue joined, find for the plaintiff in the sum of $7,500.00 with interest, less $275.14 with interest."

[11, 12] When a jury finds a verdict without specifying that it bears interest from a particular date, the judgment should be entered for the amount so found with interest from the date of the verdict; but in this case, it is perfectly apparent that the jury intended to find for the interest also.  To deny the plaintiff interest would be to ignore this finding.  The trial court entered judgment in the precise form of the verdict, and this leaves it uncertain as to the date from which the interest accrues.  The record makes the date from which interest should be computed perfectly apparent, and this court will, therefore, make the correction here and enter judgment in favor of the plaintiff for $7,224.86, with interest thereon at the rate of six per cent per annum from July 16, 1926.  This reduction in the principal amount found is brought about by the fact that the defendant is entitled to a credit of $275.14 as of that date.

*Affirmed.*