# Richmond.

## Food Products Company, Inc. v. W. C. Pierce.

March 13, 1930.

Absent, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Herman A. Sacks*, for the plaintiff in error.

*W. L. Devany, Jr.*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

In 1924, L. Seligman and S. Seligman conducted a wholesale meat and provision business in the city of Norfolk, under the trade name, York Commission Company. W. C. Pierce was a wholesale dealer in meats in that city. There was also located Food Products Company, Incorporated, a Virginia corporation, which sold mayonnaise. Pierce had had no dealings whatever with this corporation but did a considerable business with the Seligmans and had become distrustful of their solvency. In substance, he said to them that he could extend no further credits unless he was in some wise secured.

Thereupon this scheme was worked out: The commission company agreed to execute its note for $2,500.00 to Pierce, well endorsed as security for what was already due and what thereafter might become due on account of future sales. Accordingly, this, the note sued upon, was executed and delivered to him:

"$2,500.00        NORFOLK, VIRGINIA, June 2, 1924.

"Days after date we promise to pay to the order of W. C. Pierce negotiable and payable without offset at The Citizens Bank of Norfolk, Virginia, Two Thousand Five Hundred 00/100 Dollars. The endorsers hereof waive protest, presentment and notice of dishonor, and the makers and endorsers severally waive the benefit of homestead exemptions as to this debt, and in default of payment at maturity agree to pay all costs of collection, including attorney's fee of ten per cent.

"YORK COMMISSION COMPANY,
"By L. SELIGMAN.
"S. SELIGMAN."

On its back these endorsements appear:
"S. SELIGMAN.

"THE FOOD PRODUCTS COMPANY, INCORPORATED.

"B. N. CODD, treasurer.

"LOUIS SAVAGE."

Pierce was not satisfied but indicated that he would be if in addition the personal endorsement of Elias Codd was secured.

Food Products Company, Incorporated, was a close corporation made up of L. Seligman, president; Elias Codd, vice-president; and B. N. Codd, secretary-treasurer. Its directors were L. Seligman, Elias Codd and B. N. Codd. B. N. Codd owned sixty-one shares of its stock, Elias Codd thirty-nine, and L. Seligman one. This accounted for the entire capital stock. The actual conduct of the business was entrusted to B. N. Codd and in it the directors took no real part.

An attempt to comply with Pierce's demands was made. L. Seligman and S. Seligman each went to see Elias Codd and then L. Seligman and Pierce together called upon him, but on each occasion he positively refused his personal endorsement. The Seligmans then gave to Pierce another $2,500.00 note secured by a trust deed on equities to certain Norfolk real estate, which second note, they say, was given and accepted in lieu of the first. Pierce testified that it was given as additional security because the first, without Elias Codd's endorsement, was deemed insufficient. This conflict has been settled by the jury's verdict and the court's judgment.

Pierce continued to hold both notes. He realized what he could on the second, and brought this action on the first. There was still due to him from the Seligmans more than enough to cover it.

Two defenses are relied upon. It is said that B. N. Codd, as treasurer, had no power to make an accommodation endorsement, and that, even had it been made by the company itself, it was *ultra vires* and void.

■ It may readily be conceded that the treasurer of an ordinary mercantile corporation has, as such, no power to sign his company's name for accommodation, or to lend its credit to a stranger, but when close corporations like this turn over the management of their business, without supervision or control, to officers selected by them, they cannot claim the benefit of such dealings when they are profitable and repudiate them in failing ventures.

"The ordinary business world is becoming tired with, if not vexed at, this sort of jugglery, and thinks that the true principles of evidence and of agency are not so narrow or so rigid that they may not be made to reach such cases." *American B. H. O. S. Mach. Co. v. Burlack*, 35 W. Va. 661, 14 S. E. 319, 324, approved in *Haynes Chem. Corp. v. Staples & Staples, Inc.*, 133 Va. 92, 112 S. E. 806, and in *Holstein, etc., Co. v. H. Kirk & Sons*, 150 Va. 82, 142 S. E. 373.

B. N. Codd, relative to the issue here, could do anything which the company itself could do, and was the company.

This brings us to the second objection—to the plea of *ultra vires.*

■ "When a corporation has a general power, express or implied, to be a party to bills and notes, such instruments will be presumed to have been executed in the legitimate course of its business, and whether so executed or not will be valid in the hands of a *bona fide* holder without notice. Unless the corporation be specially authorized to do so, the execution or endorsement of accommodation paper for the benefit of a third person is an act beyond the scope of its corporate authority; but according to the principles stated, a *bona fide* holder, taking without notice of its character, could enforce it." Daniel on Neg.

Inst. (5th ed.), section 386. Thompson on Corp., section 5739; Joyce, Def. to Com. Pap., section 487.

This absence of power does not make the endorsement, at all times and under all circumstances, void.

■ "When a corporation has power, under any circumstances, to issue negotiable securities, the decision of this court is that the *bona fide* holder has a right to presume they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper. *Marshall County* v. *Schenck*, 5 Wall. 772, 784, 18 L. Ed. 556; Thompson on Corp., section 5740; Joyce on Def. to Com. Pap., section 487; *City Coal & Ice Co.* v. *Union Trust Co.*, 140 Va. 600, 125 S. E. 697.

■ Pierce was a purchaser for value. On the strength of this note he extended credit to the Seligmans, but he was not a purchaser for value without notice. He knew that the Food Products Company, Incorporated, was an accommodation endorser.

■ There are cases without number which hold that in the absence of authority conferred by statute or charter it is *ultra vires* of a corporation to endorse commercial paper for the benefit of another and without consideration. *Johnson* v. *Johnson Bros.*, 108 Me. 272, 80 Atl. 741, Am. & Eng. Anno. Cas. 1913A, page 1313.

■ "The endorsement of negotiable paper for accommodation is not a necessary incident to the business of a corporation, and unless such transaction is authorized by its charter, such endorsement is unlawful and *ultra vires*, and the corporation is not liable thereon: *National Bank* v. *Wells*, 79 N. Y. 498; *Bank of Genesee* v. *Patchin Bank*, 13 N. Y. 309; *Norford* v. *Farmers' Bank*, 26 Barb. [N. Y.] 568; *Bridgeport City Bank* v.

*Empire Stone Dressing Co.*, 30 Barb. [N. Y.] 421; *Savage Mfg. Co.* v. *Worthington*, 1 Gill [Md.] 284. Unless express power is granted, a corporation cannot execute accommodation paper; and such paper, if executed, is void in the hands of the assignee; *Smead* v. *Indianapolis, etc., R. R. Co.*, 11 Ind. 105; or payee; and the corporation cannot ratify such note after execution by its officers, so as to create any liability in the hands of the payee against the corporation: *Hall* v. *Auburn Turnpike Co.*, 27 Cal. 256, 87 Am. Dec. 75." Note, 31 Am. St. Rep. page 753.

The reason for this rule has been thus stated: "This proposition rests upon two or more very evident reasons: (1) The corporate funds belong to its shareholders, and, by the very terms of the law creating it, cannot be devoted to any other purpose than those indicated by its charter and constitution. Such obligations would violate the fundamental terms of the agreement between the corporators themselves. (2) To do so would be to exercise a power not conferred by the State, either expressly or impliedly. The State's grant of the corporate franchises is for the purpose prescribed, and the execution of such obligations would be beyond the power conferred and therefore a diversion of the corporate purposes, as well as of the corporate funds. (3) Such obligations rest upon no consideration, and would not, therefore, be valid. They would amount to a donation of the corporate funds and therefore an unlawful diversion. Mor. Priv. Corp. 423; *Davis* v. *Railroad Co.*, 131 Mass. 258, [41 Am. Rep. 221]; *Madison Plank-Road Co.* v. *Watertown Plank-Road Co.*, 7 Wis. 59; *McLellan* v. *File Works*, 56 Mich. 579, 23 N. W. 321; *National Park Bank* v. *German-American Mutual Warehouse & Security Co.*, 116 N. Y. 292, 22 N. E. 567, [5 L. R. A.

673]; *Aetna Nat. Bank* v. *Charter Oak Life Ins. Co.,* 50 Conn. 167." *Tod* v. *Kentucky Union Land Co.* (C. C.), 57 Fed. 47, 51.

■ There was no ratification of this endorsement by the corporation, nor was it necessary. B. N. Codd, in making it, acted within the scope of his authority, and so his act was complete in itself and required no ratification. What did the stockholders do, and how does their action affect the situation? One stockholder asked for it and another made it. The note was then taken to the third for his personal endorsement, and that he refused to give. The stockholders, as such, took no action at all.

In *Boston Box Co.* v. *Shapiro,* 249 Mass. 273, 144 N. E. 233, 235, the court said: "The plaintiff is a business corporation, and the defendant partnership, of which Shapiro was a member, were chargeable with his knowledge that the note was given by the corporation as accommodation paper. It is settled, even if all the officers, directors and stockholders assented to the issuance of the note, that such a note is *ultra vires,* and cannot be enforced by the defendants who took with notice that the note was without consideration. *J. G. Brill Co.* v. *Norton & Taunton Street Railway,* 189 Mass. 431, 75 N. E. 1090, 2 L. R. A. (N. S.) 525; *Johnson* v. *Johnson,* 108 Me. 272, 80 Atl. 741, Ann. Cas. 1913A, 1303, 1313, and cases collected in note; G. L. C. 107, sections 52, 75." *Steiner* v. *Steiner, etc., Co.,* 120 Ala. 128, 26 So. 494, 496. Fletcher Enc. Corp., page 2580.

■ Moreover, stockholders can only act at a meeting duly called and convened for the purpose.

■ Some authorities hold that the doctrine of *ultra vires* should not be applied in strictness to cor-

porations purely private, when no statute and when no charter provision forbids, and when the interest of no creditor is involved.

In Cook on Corporations (8th ed.), section 3, it is said: "A private corporation may become accommodation endorser, distribute its assets, issue its notes, stock or bonds below par, or for no consideration whatsoever, give away its assets, or may mortgage its property for the personal benefit of a part or all of its stockholders or officers; provided, always, that all the stockholders assent, and provided that corporate creditors are not injured, and provided that no statute forbids such acts. The doctrine of *ultra vires* is no longer held to forbid such acts by a private corporation under such circumstances, except as against the State."

This was approved in *Murphy* v. *Arkansas & L. Land & Imp. Co.* (C. C.), 97 Fed. 727; *Martin* v. *Niagara Falls, etc., Co.*, 122 N. Y. 165, 25 N. E. 303; *Sargeant* v. *Palace Café Co.*, 175 Cal., 737, 167 Pac. 146.

In dealing with corporations strictly private, where no outside interests are affected, the Virginia cases have manifested sympathy with this modification of the older rule, but an examination of them will show that its acceptance has been hedged about with important safeguards.

In *De Voss* v. *City of Richmond*, 18 Gratt. (59 Va.) 338, 98 Am. Dec. 646, the court said: "It is at least doubtful whether a corporation can, in any case, allege against a third person who has contracted with it that its contract was void because *ultra vires*, where the other party had no knowledge of the facts which made it so."

In the instant case, Pierce took with knowledge.

In *News-R. Co.* v. *Rockingham Pub. Co.*, 118 Va. 140, 86 S. E. 874, 878, Judge Kelly said: "We are of opinion

that where the rights of the public are not involved, a purely private corporation entering into a contract in excess of its powers, and receiving benefits thereunder, is estopped from setting up the defense that it was without power to make it, so far as such estoppel is necessary to do justice between the parties. This is true as well in a case of a contract partly performed as in a case of one completely executed."

Here the defendant corporation received no benefits, directly or indirectly. It did not even trade with the York Commission Company nor with Pierce. It lent its credit to a stranger, and might as well have underwritten any other enterprise however hazardous.

In *City Coal, etc., Co.* v. *Union Trust Co.*, *supra*, the coal company subscribed to stock in the McPherson Company, and afterwards set up want of power to make such subscription but without avail. There, also, benefits had been received. It was not a case of lending credit to a stranger.

In *Triplett* v. *Fauver*, 103 Va. 123, 48 S. E. 875, 878, it appears that Catt and Wilson owed the Staunton Milling Company a balance of $1,500.00. For that debt Catt executed his negotiable note to Wilson who endorsed it. This note was discounted in bank by Triplett. Once when it was renewed Triplett substituted for his personal endorsement this: "J. I. Triplett, president, Staunton Milling Company." He had no power to make such a change. The endorsement by the milling company was without consideration and in substance an accommodation endorsement. The court said that it "was without consideration to the company and without authority from the company, *ultra vires* and therefore void." If void, the milling company itself could not have ratified it nor could any principle of estoppel have been invoked. To this

general rule there are, as we have seen, certain excep-
tions, none of which apply here. The negotiable note
had not passed before maturity into the hands of a
purchaser for value without notice. It was not de-
livered to and acted upon by one ignorant of its charac-
ter, and it is not an obligation of a private corpora-
tion benefited by the transaction.

██ It is said that want of power has not been
shown, and that the burden of this is upon him who
asserts its absence. *Kennerly* v. *Col. Chem. Corp.*,
137 Va. 240, 119 S. E. 265.

Elias Codd testified that neither the board of
directors nor stockholders ever gave authority to
anyone to endorse accommodation paper for anybody.
After the verdict, the Food Products Company, In-
corporated, moved for a new trial, "to which motion
the plaintiff filed the following answer, and asked that
the same be made a part of the record in this cause."

That answer is:

"The said plaintiff says that the said defendant,
Food Products Company, Incorporated, should not
maintain its motion to set aside the verdict and its
plea of *ultra vires* should not be considered for the
reason that its charter in paragraph eight (8) thereof
expressly empowers the said corporation to subscribe
to, to purchase, or otherwise acquire, or to guarantee,
or to become surety in respect to the stocks, bonds, or
other securities and obligations of other corporations
or individuals, as shown from a certified copy of said
charter hereto attached and made a part of this
record, which charter is marked 'Exhibit A.'

"W. C. PIERCE,
"By W. L. DEVANY, JR., Counsel."

This answer, in support of said motion, the court
refused to receive, and plaintiff excepted.

Pierce insisted in the court below and he is insisting here that the charter warranted the endorsement. He cannot complain if we read it.

Section 8 relied upon is: "And the said corporation shall have authority to subscribe to, to purchase, or otherwise acquire, or to guarantee, or to become surety in respect to the stock bonds or other securities and obligations of other corporations or individuals."

In *Steiner* v. *Steiner, etc., supra,* a charter there considered conferred these powers: "To endorse bonds, coupons, or notes for others, and to become security or endorsers upon notes, bonds or mortgages." The court there said that it did not "extend the power beyond the entering into contracts of suretyship or guaranty in matters relating to the business of the corporation, or the loan of its credit, by endorsements, for the purpose of carrying out the legitimate objects of the corporation. Nothing but the most unequivocal language could justify us in holding that it was the intention of the stockholders to confer upon the corporation the general power, to be exercised in the discretion of the president, to endorse for the mere accommodation the notes of the president and other stockholders."

It is equally clear in the instant case that the corporation is given no right to lend its credit to a stranger.

This case comes within no exception to that rule which holds that such an endorsement is beyond the power and purposes of the corporation, and carries with it no corporate liability.

It follows from what has been said that Food Products Company, Incorporated, is not liable thereon, and the judgment against it is reversed.

*Reversed.*