# Wytheville

## AMERICAN NATIONAL BANK AND TRUST COMPANY OF DANVILLE v. SAMUEL A. KUSHNER, TRUSTEE, ETC.

June 14, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Meade, Meade & Talbott,* for the appellant.

*Kushner & Kushner,* for the appellee.

HOLT, J., delivered the opinion of the court.

Under review is a declaratory judgment. The trial court, in a joint petition, was asked to say who was justly entitled to a certain deposit made by the Danville General

Hospital, Incorporated, with the American National Bank and Trust Company of Danville, and now held by it. This agreed statement of facts is set out in the joint petition:

"On July 2, 1932, American National Bank and Trust Company conveyed to John A. Hawkins, Jr., the real estate in the city of Danville known as 'Edmunds Hospital.' The purchase price of this property was $15,000, whereof $1,000 was paid in cash, and whereof $14,000 was evidenced by a note secured by a deed of trust from John A. Hawkins, Jr., and wife, to John W. Carter, Jr., trustee, bearing date of July 2, 1932. This note for $14,000 was dated July 2, 1932, executed by John A. Hawkins, Jr., and Danville General Hospital, Incorporated, as joint makers, and was payable to the American National Bank and Trust Company six months after its date, with six per cent interest thereon payable semi-annually. - The bank did not and would not consummate the sale of this property to John A. Hawkins, Jr., until the Danville General Hospital, Incorporated, agreed to and did sign, as joint maker, the $14,000 note evidencing the deferred installment of the purchase price. Carmen M. Hawkins, the wife of John A. Hawkins, Jr., and the president of the Danville General Hospital, Incorporated, acting pursuant to resolutions of the incorporators and members of the Danville General Hospital, Incorporated, a copy of which is attached to this petition, executed, in the name of the corporation as joint maker, the $14,000 note above mentioned. The note contained, on its face, the following provisions:

" 'Value received. We, makers and endorsers, and each of us, hereby waive the benefit of our homestead exemption as to this obligation, and presentment, demand of payment, protest and notice thereof of this note, and agree that any money on deposit with the above named bank in the name of any of us may be applied at any time to the payment of or as a credit on this note, and that if this note is collected by an attorney by suit or

otherwise, to pay in addition to the amount due hereon ten per cent of said amount as attorney's fees, in no case to be less than $5.'

"The Danville General Hospital, Incorporated, a non-stock corporation, whose members and incorporators were John A. Hawkins, Jr., Carmen M. Hawkins and Benjamin P. Kushner, desired to operate a hospital in the city of Danville, and desired to conduct such business in the building purchased by John A. Hawkins, Jr., as aforesaid, which building had formerly been used as a hospital, and was adapted to that purpose. Its incorporators and its officers intended to procure the use of said building before and at the time of its incorporation, and to that end its officers, directors and incorporators were willing to sign, and its president, duly authorized thereunto, did sign the note above referred to. Subsequent to July 2, 1932, and until December 17, 1932, the Danville General Hospital, Incorporated, operated a hospital on said property purchased by John A. Hawkins, Jr. It was agreed between John A. Hawkins, owner, and John A. Hawkins, secretary-treasurer of Danville General Hospital, Incorporated, that he was to receive $150 per month rent for the use of said building, and in pursuance of said agreement, three checks for $150 each, filed herewith, were paid on this account. A copy of the charter of the Danville General Hospital, Incorporated, is filed with this petition, as a part thereof.

"On December 17, 1932, the Danville General Hospital, Incorporated, executed and delivered unto Samuel A. Kushner, trustee, a general deed of assignment, conveying all of its property in trust for the benefit of creditors. At the time of the execution of this deed of assignment, the Danville General Hospital, Incorporated, was insolvent, and it had to its credit in its checking account with the American National Bank and Trust Company the sum of $930.70. After the recordation of this deed of assignment, the American National Bank and Trust Company applied this balance of $930.70 to the credit of the Dan-

ville General Hospital, Incorporated, as a credit on the joint note of John A. Hawkins, Jr., and Danville General Hospital, Incorporated, for $14,000, which note was not due, but was to become due on January 2, 1933. Subsequent to the time that the bank applied this balance as a credit on said note, and prior to January 2, 1933, the due date of said note, Samuel A. Kushner, trustee, aforesaid, made demands upon the American National Bank and Trust Company for payment to him of $930.70, the balance in said bank to the credit of the Danville General Hospital, Incorporated, on the date of the execution of its deed of assignment, which demand the bank declined to meet.

"The fair market value for the property conveyed by the bank to John A. Hawkins, Jr., on December 17, 1932, and at the present time, is less than $9,000."

This resolution was adopted by the hospital board:

"Be it resolved by the incorporators and members of the Danville General Hospital, Incorporated, all of them being present at this meeting held this 2d day of July, 1932.

"That whereas, John A. Hawkins, Jr., proposes to buy from the American National Bank and Trust Company of Danville, Danville, Virginia, the property situate in the city of Danville, known as the 'Edmunds Hospital property' and more fully described in a deed from said American National Bank and Trust Company of Danville, Danville, Virginia, to John A. Hawkins, Jr., of even date with this resolution; and

"Whereas, the said John A. Hawkins, Jr., proposes to permit this corporation to use said property for the operation of a hospital in said city of Danville, upon such terms and conditions as may be hereafter mutually agreed upon by said John A. Hawkins, Jr., and this corporation; and

"Whereas in order to purchase said property it is necessary for the said John A. Hawkins, Jr., to give his note for the deferred purchase price in the sum of $14,000 to-

gether with this corporation as a joint maker thereof, said note to be payable six months from the date hereof; to draw interest at the rate of six per cent per annum, payable semi-annually, to be payable to bearer and to be secured by a deed of trust on said Edmunds Hospital property.

"Therefore, be it resolved: That this corporation agrees to become a joint maker on said note and Carmen M. Hawkins, its president, is hereby authorized and directed to execute said note as a joint maker and to deliver the same to the American National Bank and Trust Company of Danville, Danville, Virginia."

The trustee contends that this note is an accommodation note, so far as the hospital is concerned, and is therefore *ultra vires* and absolutely void, and further that the doctrine of estoppel cannot be invoked.

As a general proposition it is undoubtedly true that a corporation in the absence of authority conferred by statute or by charter cannot execute accommodation paper. *Food Products Co., Inc.* v. *Pierce,* 154 Va. 74, 152 S. E. 562. But an endorsement made by a corporation for the advancement or protection of its own interests is not an accommodation endorsement. *Norton Grocery Co.* v. *Bank,* 151 Va. 195, 144 S. E. 501; *Norfolk Mattress Co.* v. *Royal Mfg. Co.,* 160 Va. 623, 169 S. E. 586, 589.

In determining the character of the obligation assumed, courts look to the substance of things. In the *Norfolk Mattress Co. Case, supra,* the court said:

"These contracts, when purely voluntary and without profit or advantage to the guarantor, must be strictly construed. Brandt on Suretyship (3rd Ed.) section 416. But this principle has no application in those cases in which the guarantor binds itself for its own advancement or for a valuable consideration. *Richmond Engineering Corporation* v. *Loth,* 135 Va. 110, 115 S. E. 774; *Luck & Sons, Inc.* v. *Boatwright,* 157 Va. 490, 162 S. E. 53." And further:

" 'A corporation dealing in manufactured goods, and

needing them for sale, may, as a proper incident to its business, extend financial aid to a manufacturer by advancing him money to enable him to furnish the goods. This aid may be extended by a loan of its own money, or it may take his notes, and by its credit raise money thereon, and advance such money, looking for reimbursement out of goods to be manufactured and delivered to it.' *Holmes* v. *Willard*, 125 N. Y. 75, 81, 25 N. E. 1083, 1084, 11 L. R. A. 170. To the same effect see *Whitehead* v. *American Lamp & Brass Co.*, 70 N. J. Eq. 581, 62 Atl. 554."

The same general principle is applied in *Irwin* v. *Colburn, et al.*, 56 Cal. App. 41, 204 Pac. 551, 552. Colburn wished to rent land from Irwin that he might raise tomatoes to be sold to the Standard Canning Company. Irwin did not know Colburn but he did know the canning company and was willing to take as evidence of rent due Colburn's note endorsed by the canning company. An agreement to that effect was entered into. The canning company was called upon to pay and declined to do so. The court said:

"The sole defense interposed and upon which appellant relies is that the corporation received no consideration, and that the indorsements were purely for accomodation; that the officers who executed the indorsements, waivers, and guaranties had no power to make or indorse negotiable promissory notes for the company and to bind it as an accommodation maker or indorser and in attempting to do so acted *ultra vires*.

"Under the curcumstances of this case as above delineated appellant can hardly have the hardihood to expect or suggest that its defense should appeal to a court of justice. The decision of the trial court should not be disturbed unless it was clearly erroneous.

"The claim that the defendant received no consideration is absurd. Its contract with Colburn was executed simultaneously with the notes. They were all a part of the same transaction, and the consideration for the company guaranteeing payment of the notes was the promise of

Colburn to raise a crop of tomatoes upon the premises leased from Irwin and to sell it to the defendant. Besides this, Irwin would not have leased the premises to Colburn except for the fact that the company guaranteed payment of the notes given for the rental."

■ Let us apply these principles to the present case. Dr. Hawkins, like many physicians, wished to establish a hospital. As business enterprises they sometimes fail. That was a hazard which he did not desire to assume and so the hospital was chartered as an independent corporation. Its directors were himself, his wife and Mr. Kushner. In other words, it was absolutely under his control.

When chartered it was without property and without a home. There was at that time in Danville for sale, property known as the "Edmunds Hospital." This homeless hospital corporation "and its officers intended to procure the use of said building at the time of its incorporation, and to that end its officers, directors and incorporators were willing to sign, and its president, duly authorized thereunto, did sign the note above referred to."

Originally the plan was for Dr. Hawkins to purchase it and turn it over to his hospital, but the bank, its owner, said "No. We are willing to sell for $15,000, $1,000 cash and $14,000 to be paid later provided the Danville General Hospital, Incorporated, is willing to execute a note for this unpaid balance as joint maker with Dr. Hawkins, and we will not sell until this is done." This situation was recognized by the hospital as shown by the resolution of July 2, 1932. It had been chartered for the purpose of operating a hospital in this "Edmunds Hospital property" and unless it could be secured that purpose failed. It was to prevent this failure that it entered into a contract, now said to be without consideration and without benefit to itself. The procurement of the charter, the purchase by Dr. Hawkins and the conveyance to itself were all part and parcel of one transaction. In the language of the California court, it is absurd to say that there was no consideration.

■

The resolution of July 2, 1932, declares that it was "necessary" for the hospital corporation to do the thing which it did in order to secure the home which it desired and which was desired from the beginning. It had power to execute notes given to advance its own interests. Code, section 3777, as amended by Acts 1928, ch. 385.

Rent at $150 a month was paid by the hospital for three months to or for Dr. Hawkins.

Declaratory judgments are authorized by chapter 254A (section 6140a *et seq.*) of the Code. They are intended to supplement rather than to supersede ordinary causes of action and to relieve litigants of the common-law rule that no declaration of rights may be judicially adjudged until a right has been violated. Preventive relief is the moving purpose. Whether or not jurisdiction shall be taken is within the sound discretion of the trial court. Something more than an "actual controversy" is necessary. In common cases where a right has matured or a wrong has been suffered, customary processes of the court, where they are ample and adequate, should be adopted.

Defendant has moved to dismiss the writ of error as improvidently awarded, for the reasons that there is no bill of exceptions and nothing to show objection to anything which the trial court did.

The record consists of a joint petition for a declaratory judgment together with exhibits, and the judgment of the trial court. Error, if there be error, is apparent upon the face of the record as it stood. There was nothing which could be added to it by a bill of exceptions nor was a motion for a new trial necessary. *C. & O. Ry. Co.* v. *Sparrow,* 98 Va. 630, 37 S. E. 302; Code, section 6254. When judgment was entered the bank indicated its purpose to appeal and proper time was given by the trial court. Under the terms of the note itself, this balance on deposit may be applied thereon.

The judgment of the trial court should be reversed, and it is so ordered.

*Reversed.*