BUNGALOW GAS COMPANY *et al. v.* JOHN H. SWANSON *et al.*

(No. 8144)

Submitted September 23, 1936. Decided October 20, 1936.

*Lilly & Lilly* and *Jacob D. Smith,* for appellants.

*Russell W. Morris,* for appellees.

LITZ, JUDGE:

The object of this suit is to enjoin an action at law for the recovery of money on contract and rescind the contract upon which the action is predicated. Fraud in the procurement of the contract is charged as the basis for relief. Plaintiffs appeal from a decree entered upon motion of defendants, Frank Martin and John Swanson, dissolving a temporary injunction and dismissing the bill.

The bill alleges, substantially, that plaintiff, Bungalow Gas Company, is a corporation organized "mainly" for the purpose of drilling and operating a gas well on land in the City of Huntington, Cabell County, West Virginia, under an oil and gas lease with the owner thereof; that in July, 1933, the company completed a large producing gas well on the property, the production of which it is selling to West Virginia Gas Corporation at the price of ten cents per thousand cubic feet; that the individual plaintiffs and defendants, John H. Swanson, Frank Martin, A. A. Lilly and his daughter, Mrs. John A. Wade, are the stockholders of the corporation; that defendants, Swanson, Lilly and Martin, and two other stockholders comprise the board of directors thereof; that Lilly and

Mrs. Wade own 49% of the stock, and they, Swanson and Martin own the controlling interest; that in September, 1933, defendants Swanson and Martin began the drilling of a gas well on land in the City of Huntington, which they had leased from the owner thereof, for the exploration and production of gas thereon, about 1500 feet from the Bungalow Gas Company well; that in December, following, before completing the well, they approached Lilly, proposing to sell their rights in the leasehold to the Bungalow Company for the actual cost of the well; that they represented to Lilly that they had interviewed all of the other stockholders but one concerning the matter and that all of the stockholders they had approached were willing and anxious for the company to purchase the property; that because of such representation by Swanson and Martin, Lilly finally consented to the purchase by the company, with the understanding and agreement, however, that Swanson and Martin would repay him and Mrs. Wade the proportionate cost of drilling the well (but no part of the casing or other equipment) which would be borne by the stock of Lilly and Mrs. Wade in the company; that in consideration whereof Lilly agreed to pay Swanson and Martin one-half of the net profit as stockholders of the company; that at a meeting of the stockholders, January 10, 1934, the plaintiff stockholders vigorously objected to the purchase from Swanson and Martin; that at a meeting of stockholders, April 1, 1934, plaintiff stockholders, after again protesting the purchase, tentatively agreed thereto upon Swanson and Martin consenting to eliminate from the cost of the well two items amounting to $393.78; that the private understanding between Swanson, Martin and Lilly, which the bill alleges was a fraud upon the rights of the other stockholders, was not disclosed to them at the time they tentatively agreed to the purchase by the company; that the company has paid unnamed amounts on the purchase price of the leasehold; and that defendants, Swanson and Martin, have instituted an action against the company to recover the balance. The bill impliedly alleges the

completion of the well and sale of gas therefrom by the company, and prays that the action be enjoined; that the well be sold and the proceeds therefrom and dividends to Swanson and Martin, as stockholders of the company, be applied in repayment of the money paid by it to Swanson and Martin on the purchase price of the leasehold.

The bill does not allege that the company made a bad bargain in purchasing the leasehold from Swanson and Martin or that the other stockholders were influenced or induced by Lilly to consent to the purchase thereof or that the alleged agreement or understanding between Lilly, Martin and Swanson in any way injured the company or the plaintiff stockholders. Whether the bill may be amended in the particulars specified, we are of opinion that any benefit the corporation may have by reason thereof must be relied on as a defense to the action at law. The bill does not allege any distinctive grounds for equitable relief. There is no prayer for cancellation, reformation or modification, and nothing irregular in the legal proceeding is shown. It seeks a sequestration of certain funds belonging to Swanson and Martin and a sale of the leasehold in question, but does not allege that Swanson or Martin are insolvent or that the debt cannot be collected in any other manner.

Such fraud as is alleged may have been shown in the law action under plea of the general issue as at common law. *Mylius* v. *Massillon Engine & Thresher Co.,* 70 W. Va. 576, 74 S. E. 728; *Armentrout* v. *Armentrout,* 70 W. Va. 661, 74 S. E. 907; Burks, Pleading and Practice (3rd Ed.), 407. And, while it is not pleaded, if the Gas Company has paid to Swanson and Martin more than it has received from the operation of the leasehold, it may, by establishing the defense of fraud, recover over in the action at law, at least by special plea of set-off under section 5, article 5, chapter 56, Code 1931, as set-off may arise out of the same transaction in which the action is based as well as independent transactions. *West Virginia Pulp & Paper Co.* v. *Whitemore,* 89 W. Va. 622, 109 S. E. 722; *Neal Coal Co.* v. *Virginian Ry. Co.,* 101 W. Va.

147, 132 S. E. 202; 57 C. J. 398. It is therefore not necessary to consider the effect of section 5, article 5, chapter 56, amplifying the defense of common law recoupment, and section 6, preserving to defendant his equitable remedies in event of his failure or inability to take advantage of statutory recoupment under section 5. The remedy in the law action is adequate. "Injunction is one of the extraordinary remedies, and equity will not relieve by injunction when there is a plain and adequate remedy at law. In fact, it is essential to confer jurisdiction by injunction, that it must appear that no adequate relief exists in law on the facts averred, and a bill which fails to show the want of such legal remedy is fatally bad." *Burkhart* v. *Scott,* 69 W. Va. 694, 696, 72 S. E. 784; 14 R. C. L. 307. Proceedings at law will not be enjoined by a court of chancery, unless it can give a more perfect remedy, or the case can be better tried by equity procedure. *Grafton & Belington Railroad Co.* v. *Buckhannon & Northern Railroad Co.,* 56 W. Va. 458, 460, 49 S. E. 532. Further, if a court of law and a court of equity have concurrent jurisdiction and an action at law has already been commenced, a court of equity will not interfere where a complete and adequate remedy is available at law. 1 Pomeroy's Equity Jurisprudence, 235. "Equity will not interfere where there is adequate remedy at law. Even where there is concurrent jurisdiction, the tribunal which first obtains possession of the subject must adjudicate, and neither party can be forced into equity." *Crawford* v. *Bosworth,* 72 W. Va. 543, 78 S. E. 623, 624; Lawrence on Equity Jurisprudence, section 843.

Plaintiffs urge, as a matter of procedure, that the circuit court improperly dissolved the injunction and dismissed the bill upon motion. An injunction may be dissolved on motion, without demurrer or answer, where the bill is insufficient. *Hyre* v. *Hoover and Jones,* 3 W. Va. 11; *White Sulphur Springs Co.* v. *Robinson et al.,* 3 W. Va. 542; Carlin, Functions of a Demurrer under the Revised Code, 41 W. Va. Law Quarterly, 313, 328, 329.

The bill, not presenting a case justifying equitable in-

terference with the action at law, was rightly dismissed. "Where an injunction is wholly dissolved, the bill shall be dismissed with costs, unless sufficient cause be shown against such dismission." Code, 53-5-13.

The decree of the circuit court is affirmed.

*Affirmed.*