# Richmond

## D. D. Jones Transfer & Warehouse Company, Inc. v. Commonwealth ex rel. State Corporation Commission, et al.

November 20, 1939.

Record No. 2162.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

*George E. Allen, J. Alfred Tyler* and *Ashton Dovell,* for the appellant.

*Lucian H. Cocke, Jr., Walter C. Plunkett, D. H. Leake, Oscar L. Shewmake* and *Leith S. Bremner,* for the appellees.

HOLT, J., delivered the opinion of the court.

D. D. Jones Transfer & Warehouse Company, Inc., a public service corporation, has applied for a certificate of public convenience and necessity, authorizing it to act as a

common carrier of property by motor vehicles between the cities of Norfolk and Richmond. The proposed route is over the Willoughby-Old Point Ferry through Phoebus to Hampton, to Yorktown, to Williamsburg, and from Williamsburg to Richmond over highway numbered five. This application is contested by a number of defendants, actively by The Norfolk & Western Railway Company, The Virginian Railway Company, The Chesapeake & Ohio Railway Company, and the Hampton Roads Transportation Company. This transportation company, The Norfolk & Western Railway Company and The Chesapeake & Ohio Railway Company all directly serve these terminals. The Hampton Roads Transportation Company holds a certificate which permits it to operate over Route 60, running from Richmond to Williamsburg, to Newport News, to Hampton, to Phoebus and to Norfolk; over Route 10 from Richmond to Hopewell, to Smithfield, to Norfolk, and also over Route 460 from Richmond to Petersburg, thence along the Norfolk & Western Railway line to Suffolk and on to Norfolk. Under permission thus given it is now operating over these routes.

Applicant contends that it would render necessary service to rural districts not now served but concedes that it could not operate with profit if it were denied the right to serve Richmond and Norfolk. Roughly speaking, the routes of these two motor vehicle companies would parallel each other, or serve the same territory, until Williamsburg was reached, and are but a short distance apart. They also parallel each other from Williamsburg to Richmond, but the distance is greater and averages something like ten miles, all of which appears from a plat facing page 187.

Sub-section (c), section 6, Motor Vehicle Carrier Act, approved March 6, 1936, Session Acts, ch. 129, p. 230, tells us when these certificates should issue. It reads:

"If the commission shall find the proposed operation justified it shall issue a certificate to the applicant, subject to such terms, limitations and restrictions as the commis-

sion may deem proper. If the commission shall find the proposed operation not justified, the application shall be denied. No certificate shall be granted to an applicant proposing to operate over the route of any holder of a certificate when the public convenience and necessity with respect to such route is being adequately served by such certificate holder; and no certificate shall be granted to an applicant proposing to operate over the route of any holder of a certificate unless and until it shall be proved to the satisfaction of the commission that the service rendered by such certificate holder, over the said route, is inadequate to the public needs; and if the commission shall be of opinion that the service rendered by such certificate holder over the said route is in any respect inadequate to the public needs, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy before any certificate shall be granted to an applicant proposing to operate over such route."

And by sub-section (d), the Commission is further directed to take these matters into consideration:

"Present transportation facilities over the proposed route of the applicant, the volume of traffic over such route, the financial condition of the applicant and the condition of the highway over the proposed route or routes."

This is petitioner's statement of its assignment of error:

"The sole assignment of error is to the action of the Honorable Commission in construing sub-section (c), of section 6, of the Motor Carrier Act of 1936, to the effect that the Commission was without authority to grant a certificate to your petitioner to operate over the particular routes described in its application, because the Hampton Roads Transportation Company held certificates to render a like service over *other* routes between Norfolk and Richmond, and was, therefore, *as a matter of law,* entitled to a certificate over the routes described in petitioner's application, although the Hampton Roads Transportation Company held no certificate to operate over said routes."

There is no order to this effect, and if such a conclusion can be reached, it must be through the more or less informal colloquies between court and counsel, wherein, as we shall hereafter see, there was really no agreement about anything.

The State Corporation Commission is acting in its judicial capacity and as a court of record (*Norfolk & W. R. Co.* v. *Tidewater R. Co.*, 105 Va. 129, 52 S. E. 852) and speaks through its record. In it are but two orders. The first sets the case down for hearing; the second dismisses it. In this order of dismissal and in compliance with clause (f) of section 156 of the Constitution, the Commission has in writing stated its reasons for that order.

"In the matter of the application of D. D. Jones Transfer & Warehouse Company, Incorporated, for a certificate of public convenience and necessity.

"This matter came on to be heard this date and was dismissed for lack of evidence to support the application."

In a certificate by Honorable William Meade Fletcher, Chairman of the Commission, appears this statement:

"It will be noted from the record that Witness Wright's answers to Commissioner Ozlin's questions, on page 12, concludes his testimony and is all the testimony introduced in this case. There is not the slightest evidence upon which the Commission could possibly pass favorably upon this application. It had no alternative other than to dismiss the application for lack of evidence to support it."

Said sub-section (f) of section 156 of the Constitution also contains these provisions:

"The commission shall, whenever an appeal is taken therefrom, file with the record of the case and as a part thereof, a written statement of the reasons upon which the action appealed from was based, and such statement shall be read and considered by the appellate court upon disposing of the appeal. The appellate court shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the commission appealed from, as well as any other matter arising under such appeal; pro-

vided, however, that the action of the commission appealed from shall be regarded as prima facie just, reasonable and correct, but the court may, when it deems necessary in the interest of justice, remand to the commission any case pending on appeal, and require the same to be further investigated by the commission, and reported upon to the court (together with a certificate of such additional evidence as may be tendered before the commission by any party in interest), before the appeal is finally decided."

Here are three provisions to be remembered: (1) We hear this case on appeal and without original jurisdiction. (2) The judgment of the Commission must be regarded as *prima facie* just, reasonable and correct, but (3) we may, if deemed necessary and in the interest of justice remand it to the Commission for further investigation and for report thereon, all of which must be considered by us before final decision.

It is not contended that there is evidence in the record upon which the Commission should issue a certificate of public convenience and necessity. The statement of the Commission to that effect is not challenged. What we are asked to do is to enter a declaratory judgment, or, to state that proposition more in detail, Has the appellant, D. D. Jones Transfer & Warehouse Company, Incorporated, the right to invoke the declaratory judgment act, Acts 1922, ch. 517, page 902, Code, section 6104a et seq., and obtain a construction by the Supreme Court of Appeals of Virginia of chapter 129 of the Acts of Assembly of 1936, with particular reference to sub-section (c) of section 6 of that act?

During the examination of J. Luther Wright, which examination was never completed, said sub-section (c), of section 6, of the Motor Carrier Act, came up for discussion. This appears from the record:

"Commissioner Hooker: The Commission, after having read the entire record in this matter and carefully considering it, finds that from this record and the stipulations which have been agreed upon, it would show that some service is required—that public convenience and necessity

would require some service by motor vehicle between Richmond and Norfolk as well as intermediate territory. Under this law we are required, if such additional service is needed, to grant the certificates to someone, to offer it to the present holder to put it on, or give it to the applicant. The Commissioner could not possibly ascertain what kind of service or how much service it is necessary to put on without evidence. Consequently, we will have to go ahead and hear the evidence. Proceed.

"Mr. Dovell: For the sake of the record may counsel inquire if the statement just made by Judge Hooker is to be regarded as inclusive of all statements made by the Commission as to what it will do as to granting the franchise only to the present franchise holder of the Commission? Do I understand the Commission is open-minded as to who will be the recipient of the franchise if convenience and necessity is developed? By that I mean the applicant or the present holder of the franchise?

"Commissioner Hooker: Speaking I assume for the majority of the Commission, the Commission's mind is always left open until the case is completed, bearing in mind the evidence and the law.

"Mr. Dovell: I asked that because you advised us that, if we did develop the case, you would give the franchise holder the right to render the service?

"Commissioner Hooker: That still stands.

"Chairman Fletcher: I dissent from that view."

It will be noted that Chairman Fletcher dissented from this view, but he afterwards said:

"I think before the Commission should pass a case of this kind over to the Court of Appeals, that there should not be submitted to the Court of Appeals an abstract problem of law, but evidence should be introduced and fully put into the record."

In this Commissioner Ozlin concurred. He also said:

"I want to state that the position I have taken is not based solely on the construction of that statute. I want that in the record."

From which it is seen that in the judgment of two of the commissioners, at least, the applicability of the statute depended upon facts which the evidence, if produced, might have disclosed; and, strange to say, this also seems to have been the view of counsel for petitioner, who, in declining to introduce evidence, said:

"Commissioner Hooker: Have you all made up your minds on what you want to do?

"Mr. Allen: Yes. May it please the Commission, we are of opinion that the real controversy here is over the true interpretation and construction of the statute which has been referred to, and we believe under the broad and liberal terms of our declaratory judgment statute, as applied by the Court of Appeals, we have a right under the present state of the record to get a construction of that statute, to say nothing of any other question that arises. We feel that if we go through the trial of the case, the Commission might find it proper to base its final decision on some ground from which we could not appeal to the Supreme Court and seek a construction of the statute, * * * ."

In other words, petitioner was unwilling to introduce evidence for fear that the evidence, if produced, might sh that it had no case under any possible construction... the statute. This colloquy concludes the hearing:

"Chairman Fletcher: You intend to apply to the Court of Appeals for a declaratory judgment in regard to the construction of that statute without producing any evidence before the Commission?

"Mr. Allen: I think that after a case gets into the Court of Appeals where it would be proper to apply the statute, the Court would apply it regardless of how it originated, whether it originated in the Circuit Court, or Court of Record, or whether the question arose before the State Corporation Commission.

"Chairman Fletcher: The State Corporation Commission is a court of record.

"Mr. Allen: Yes, that is true.

"Chairman Fletcher: And it is your idea without making application to the State Corporation Commission to secure from the Court of Appeals a declaratory judgment as an abstract proposition?

"Mr. Allen: Ordinarily, we have to follow certain procedure, but when the question arises and the case goes to the Court of Appeals, we believe the statute is sufficiently broad to require a true interpretation; and we are of the opinion, in view of what has taken place and the several motions made and expressions by the Honorable Commission, we don't believe that the Court of Appeals would require us to go through several days of introducing evidence in view of the construction of the statute by the Commission.

"Commissioner Ozlin: I want to state that the position I have taken is not based solely on the construction of that statute. I want that in the record.

"Commissioner Hooker: Does that close the case?

"Mr. Allen: Yes."

█ That is to say, we are asked on appeal to enter a declaratory judgment where no such application was made to the court below. There can be no appeal in a case where nothing was asked for and nothing done, and since there is no appeal, our jurisdiction, if any, must be original. Section 88 of our Constitution reads, in part, as follows:

"The court shall have original jurisdiction in cases of habeas corpus, mandamus and prohibition, but in other cases in which it shall have jurisdiction, shall have appellate jurisdiction only."

In all other cases, our jurisdiction is appellate.

██ Declaratory judgments are creatures of statutes. We are told when they may be procured and how. In cases of actual controversy, courts of record "within the scope of their respective jurisdictions shall have power to make binding adjudications." Code, section 6140a. We have no original jurisdiction.

"Declaratory judgments, orders and decrees may be obtained as other judgments, orders and decrees, and may be reviewed on writ of error or appeal." Code, section 6140b.

No such judgment is before us for review on writ of error or appeal.

It was not intended that the statute should be invoked in every case where a controversy was possible. One contemplating a future divorce should not be permitted to invoke it to ascertain what corroboration of his evidence was necessary. That question would be incidental to and should be decided in due course when the cause came on to be heard, just as unnumbered statutes must be construed in orderly procedure in unnumbered cases.

"Whether or not jurisdiction shall be taken is within the sound discretion of the trial court. Something more than an 'actual controversy' is necessary. In common cases where a right has matured or a wrong has been suffered, customary processes of the court, where they are ample and adequate, should be adopted." *American National Bank & Trust Co.* v. *Kushner,* 162 Va. 378, 174 S. E. 777.

Plainly the Commission cannot be charged with an abuse of discretion in failing to do something which it was not asked to do.

This case should not be remanded to enable petitioner to take evidence, for that it has once definitely declined to do, and we should not be expected to remand it to an inferior tribunal that we may be informed as to how a statute should be construed.

Sometimes, on questions of law, inferior courts invoke the aid of those to whom an appeal might be taken. U. S. C. A., Vol. 28, section 346. But such is the limit of advisory procedure.

In the instant case, a construction of this statute, as we have seen, might not have been necessary at all, and in no event did it become necessary, except as incidentally applicable to evidence which should have been produced, and which in all probability would have been controlling.

The order of the State Corporation Commission should be affirmed. In reaching this conclusion, the power of the State Corporation Commission to enter a declaratory judgment has not been considered, for none has been entered by it.

*Affirmed.*