# Richmond

## Moscoe Belcher, Et Al. v. Paul M. Davis, Et Al.

October 9, 1961.

Record No. 5295.

Present, Eggleston, C. J., and Whittle, Snead, l'Anson and Carrico, JJ.

*George C. Sutherland* (*S. H. & George C. Sutherland*, on brief), for the appellants.

*Pat B. Hale*, for the appellees.

Snead, J., delivered the opinion of the court.

Paul M. Davis and Oweda Davis, his wife, appellees, filed their bill and amended bill in which they sought to enjoin Moscoe Belcher and

Mae Belcher, his wife, appellants, from further issuing trespass warrants against them for using a vehicular bridge, which was constructed by the Belchers, across Levisa River in the town of Grundy and from interfering with their use of the bridge until it could be determined by the court whether they had acquired by prescription a right to the use and enjoyment of it. They requested that the trial of an action at law for damages for breach of contract for the use of the bridge brought by the Belchers against them prior to the filing of their bill be "continued and deferred" until the present suit was decided. The Belchers demurred to the bill and the amended bill, and filed an answer and cross-bill. The evidence was submitted by depositions. The court, by its decree of August 19, 1960, among other things, overruled the demurrer; enjoined the Belchers from prosecuting their law action; conditionally denied the Belchers' prayer in their cross-bill for an injunction restraining the Davises from using the bridge, and conditionally granted the Davises the use of the bridge for pedestrian purposes.

Levisa River runs in a westerly direction at the "lower side of Grundy". At this point the Belchers, the Davises, J. H. Ratliff and others resided on separate properties on the south side of the river. Norfolk and Western Railway Company owns a right of way between their properties and the river. The Belchers and Ratliff owned separate adjoining lands on the opposite side (north) between the river and U. S. Route 460 which parallels the river a short distance from it.

In 1950, the litigants, Ratliff and several neighbors decided to build a swinging footbridge across the river for an access to U. S. Route 460. Prior to that time they crossed the river either by a ford or by boats. By agreement dated December 17, 1949, permission was granted Belcher by the railroad to use a part of its property for the construction and maintenance of the footbridge for an annual consideration of $5 to be paid by him. It was erected in 1950, on the railroad's property on the south side of the river and on the land of the Belchers on the north. The cost of construction was about $700, which was contributed by the litigants, Ratliff, several neighbors, town of Grundy and the county of Buchanan. In addition, the persons involved contributed their labor.

In 1955, Belcher, who had leased a portion of the railroad's property for the purpose, constructed a vehicular bridge across the river immediately below the footbridge. By a written agreement dated Octo-

ber 1, 1956, the Belchers granted the Davises the privilege of using this bridge for a consideration of $30 annually. The contract provided that it was for an indefinite period of time and that the Belchers reserved the right to cancel it without reason by giving ninety days notice in writing prior to the effective cancellation date.

On January 29, 1957, there was an unusual freshet which washed out both bridges. According to Belcher, the footbridge collapsed first and lodged against the vehicular bridge causing it to give way. Shortly thereafter the footbridge was rebuilt with the labor of Paul Davis and his neighbors interested in the project by using the salvaged materials in the original footbridge. Davis said Belcher "helped tighten up the clamps". Belcher testified: "I do recall telling them that they had their clamps on wrong, but so far as tightening them up, I don't recall, I wouldn't say I did or didn't, but anything further than that I did nothing." He was asked on direct examination: "What was said, if anything, by you at the time it was being re-built as to whether or not permission to use your land would be continued?" His reply was: "It wasn't mentioned."

Later, in May 1957, the Belchers reconstructed their vehicular bridge. Belcher then advised the parties interested in the footbridge that he wanted them to remove it, and that they could have the materials if they did. They failed to comply and Belcher caused it to be removed. He testified that he took this action to protect the vehicular bridge, which cost about $8,000, from damage by the footbridge in event of another flood. On October 18, 1958, in accordance with the terms of the agreement, the Belchers notified the Davises that the contract with them which permitted their use of the vehicular bridge would terminate on January 18, 1959. Prior thereto the Belchers had granted a coal company the right to use the vehicular bridge to haul coal with their trucks. The Davises refused to discontinue the use of the bridge and the Belchers instituted an action at law for damages in the sum of $2,000 for breach of contract. Thereafter the present suit was brought.

The chancellor held that since the lands owned by the litigants were formerly owned by one person, D. C. Ratliff, and the litigants had jointly contributed money and labor in the construction of the footbridge and had used and accepted the benefits of it, the Belchers had no right to remove the footbridge without providing the Davises with a similar means of crossing the river, which ruling overlooks the fact that the bridge was on the Belchers' land only by virtue of their consent. The decree enjoined the Belchers from prosecuting their pending

action at law against the Davises, and the Belchers were denied an injunction restraining the Davises from using the vehicular bridge until such time as the Belchers had restored the footbridge. The Davises were enjoined from using the vehicular bridge for purposes other than pedestrian traffic. The decree did not enjoin the Belchers from further issuing trespass warrants, nor did it hold that the Davises had acquired a right to use the bridge by prescription.

The Belchers have assigned a number of errors. In substance they challenge the correctness of the court's rulings in overruling their demurrer; in enjoining them from prosecuting their law action; in holding that they had no right to remove the footbridge; in permitting the Davises to use the vehicular bridge for pedestrian purposes contrary to the contract between the parties, and in refusing to enjoin the Davises from using the vehicular bridge.

The primary question involved is whether the court erred in enjoining the Belchers from prosecuting their law action.

In 10 M. J., Injunctions, § 22, p. 27, it is stated:

"And it is well settled that a court of equity will interfere by injunction either pending an action or after judgment, where there is a distinct defense against the claim asserted at law which is solely cognizable in equity. Conversely, the court will not enjoin the prosecution of an action at law when the defendant can make a full and adequate defense in such action. A suit at law cannot be enjoined and the litigation transferred to the equity forum merely on the assertion of defenses that are pleadable at law. An action at law will not be enjoined except where a court of chancery may afford a more adequate and perfect remedy." See *Connell* v. *Yost*, 62 W. Va. 66, 57 S. E. 299; *Gas Co.* v. *Swanson*, 117 W. Va. 763, 188 S. E. 235; *Virginia Mining Co.* v. *Wilkinson*, 92 Va. 98, 22 S. E. 839; Beach, *Modern Equity*, § 640, p. 713; Barton's *Chancery Practice*, 3rd ed, Vol. 1, p. 604.

The bill of complaint was predicated upon an alleged prescriptive right the Davises had acquired to use the vehicular bridge. That right, if it exists, was available to them as a defense in the law action. A finding by the court or jury that they had acquired such a right would necessarily result in a judgment for them and establish that they were not trespassers and have a right to use the vehicular bridge. The Davises argue here that they had acquired an easement over the bridge by estoppel. This defense, likewise, was available to them in the law action.

The Belchers had a right to sue at law for the breach of contract

alleged by them in their motion for judgment. The Davises have the right to assert in defense of said action the same grounds upon which they have relied to entitle them to an injunction against the prosecution of that action. It was, therefore, on the record in this case, error to enjoin the prosecution of the law action and determine the issues between the parties in equity by granting the relief set out in the decree.

Having reached this conclusion, we consider it unnecessary to discuss the other errors assigned.

The decree appealed from is reversed, the injunctions are dissolved, and the bill of complaint, as amended, is dismissed.

*Reversed and final decree.*