# Richmond

## H. Lee Williams v. Southern Bank of Norfolk.

June 11, 1962.

Record No. 5396.

Present, All the Justices.

*Wayne Lustig (Gordon E. Campbell,* on brief), for the appellant.

*Robert R. MacMillan (Breeden, Howard & MacMillan,* on brief), for the appellee.

SPRATLEY, J., delivered the opinion of the court.

■ The Southern Bank of Norfolk, hereinafter referred to as Bank, instituted this proceeding on November 2, 1960, by filing a petition for a declaratory judgment and injunction against H. Lee Williams, hereinafter referred to as appellant. The petition alleged that appellant, an officer and principal stockholder of Lee Motors, Inc., and Lee Motors, Inc. were former customers and depositors of Bank, and from time to time had Bank finance motor vehicles bought or sold by appellant and his corporation; that during that relationship certain events occurred and Bank was advised by its attorney at law that there was probable cause to believe that "a crime" had been committed by appellant; that the facts were made known by its attorney to the Commonwealth's Attorney of the city of Norfolk; and that in June, 1960, appellant was indicted by the grand jury of the city of Norfolk on eleven separate charges of larceny related directly or indirectly to the financing of motor vehicles with Bank.

The petition further alleged that on September 13, 1960, two of the said indictments were tried in the Corporation Court of the city of Norfolk and resulted in the acquittal of the appellant in each case; that on October 21, 1960, the Commonwealth's Attorney of the city of Norfolk moved the trial court to *"nol pros"* the remaining nine indictments against appellant and the motion was granted; that subsequently appellant, by his attorney, threatened to institute "as many as eleven actions" against Bank for malicious prosecution, seeking damages, actual or punitive, in large sums of money, unless Bank paid appellant large sums of money to release his claims.

The petition further set out that each of the threatened actions against Bank arose out of the independent decision of the Commonwealth's Attorney of the city of Norfolk to prepare and present to the grand jury the said eleven indictments, and the independent action of the grand jury in finding a true bill in each instance; that Bank would suffer irreparable injury if appellant should be "permitted to maintain multiple, harassing actions at law against it alleging malicious prosecution and predicated upon the action of the Commonwealth's Attorney and the grand jury;" and that an "actual controversy existed between the parties; namely, whether or

not Bank can be held civilly liable for the alleged malicious prosecution of" appellant.

Bank prayed that, "pending the determination of this issue in the cause, a preliminary injunction issue" enjoining appellant, his agents and attorneys, from instituting, maintaining, or prosecuting any action or actions, or suit or suits, against Bank alleging malicious prosecution by it on account of the finding of any of the said indictments, and that, after a hearing of the controversy that a permanent injunction issue.

Upon the filing of the petition, a temporary restraining order was granted. Thereafter, on November 4, 1960, appellant filed his answer denying: (1) That the indictments grew solely out of the independent action of the Commonwealth's Attorney or of the grand jury; (2) That appellant's attorney had "threatened" to institute legal proceedings against Bank; (3) That Bank would suffer irreparable injury, if appellant were permitted to maintain the actions at law for malicious prosecution; and, (4) That an actual controversy existed between the parties. The answer asserted that Bank was not remediless, save in a court of equity, and prayed that its petition be dismissed.

Appellant also filed a motion on November 11, 1960, to dissolve the temporary injunction upon the grounds that it was improvidently awarded, since Bank had a full, complete and adequate remedy at law; that the petition did not show a denial of such remedy, nor good cause for relief; and that the injunction was in violation of § 8-583 of the Code of Virginia, 1950.

On February 27, 1961, the cause came on to be heard on the petition of Bank, the answer of appellant, and the evidence heard *ore tenus*. Neither party requested a jury. The chancellor being of opinion that the evidence showed that Bank had made a full disclosure to its counsel of all material facts within its knowledge bearing on the guilt of appellant, decreed that the temporary injunction be made permanent.

Appellant, at all stages of the proceeding, objected to the court's assuming jurisdiction of the cause. He waived none of his rights as to the procedure, and relied upon the grounds set out both in his answer and motion to dissolve the temporary injunction. In addition, he now contends that the chancellor also erred in determining on conflicting evidence that Bank had made a full disclosure of all material facts to the Commonwealth's Attorney, thereby depriving the appellant of his right to a jury trial upon an issue of fact.

On the other hand, Bank contends that threatened with eleven separate actions for malicious prosecution, alleged by it as arising from indictments procured by independent acts of the Commonwealth's Attorney and the grand jury, it was entitled to have a complete remedy from the threatened harassment incident thereto decreed in one declaratory judgment proceeding, rather than to be required to establish its remedy in eleven tort actions.

In view of our conclusion, the evidence will be summarized and stated briefly in general terms:

Appellant was an automobile dealer. He obtained funds from Bank for the purchase and sale of automobiles under what is termed "floor plan loans." A "floor plan loan" is described as a system whereby the dealer obtains money for the purchase of an automobile, placed in his showroom or on his sales lot, by giving the lender a note, a deed of trust on the vehicle securing the note, and a certificate of title to the vehicle with the lien endorsed thereon, agreeing that when the vehicle is sold by the dealer, the proceeds of the sale would be used to pay off the note, the deed of trust, and the lien. Officials of Bank testified that the loan from Bank was to be paid to it immediately upon the sale of a vehicle to a third party. When vehicles were sold under conditional sales contracts, appellant was allowed to discount the contract with Bank and use the proceeds to satisfy the lien held by Bank against each vehicle, a small portion of such proceeds, incidental to the finance charge for the transaction with the conditional sales purchaser, being set aside to the dealer as a reserve to protect Bank in the event the vehicle was repossessed, or the purchaser failed to make full payment therefor.

On behalf of appellant, there was testimony that Bank, with full knowledge, acquiescence and approval, permitted appellant to sell encumbered vehicles and pay off the liens against them to Bank days or weeks after he had received payment from the purchaser of the vehicle, or had discounted purchaser's contract; and that Bank failed to inform either its attorney or the Commonwealth's Attorney of their pattern of practice.

Officers of Bank testified that, in making a spot check on April 9, 1960, upon appellant's automobile inventory, they discovered eight cars, subject to liens of Bank, had been sold and delivered to customers of appellant without payment by appellant of Bank's liens thereon, in violation of § 18.1-116, Code of Virginia, 1950. Unable to settle their differences by negotiations, Bank communicated the above information to its attorney at law, Savory E. Amato, and

authorized him to lay the matter before the Commonwealth's Attorney. The Commonwealth's Attorney, after conferring with officers of Bank and its attorney, and making a further investigation, drafted and presented eleven indictments of appellant to the grand jury, and a true bill was returned in each case.

Appellant questioned the sufficiency of the evidence to show that Bank made a full, correct and honest statement of all the material facts within its knowledge, either to its attorney or the Commonwealth's Attorney. In particular, he claims that Bank failed to inform its counsel and the Commonwealth's Attorney that it was the custom and practice of Bank to allow him to make delayed payment of "floor plan loans" against vehicles sold to third parties, and that this had an important bearing on the question of criminal intent.

Mr. Amato, the attorney for Bank, was the sole witness before the grand jury, and he also assisted the Commonwealth's Attorney in the prosecution of the two indictments, hereinafter mentioned, which were brought to trial.

Ten of the eleven indictments contained two counts. Indictment No. 1 charged in the first count the grand larceny of $6,222.00 U. S. currency of the goods and chattels of Bank; and in the second count the theft of an automobile of the same value, the property of Bank. The second indictment charged in the first count the larceny of $4,072.85 belonging to City Ambulance Service, Inc.; and in the second count the theft of an automobile, the property of City Ambulance Service, Inc., of the same value. The third indictment contained only one count, charging the theft of $9,000.00 U. S. currency and cash, of the goods and chattels of Bank. The other eight indictments each charged, in one count, the grand larceny of an automobile of a certain cash value, and, in the second count, the fraudulent conversion of that automobile which was subject to the lien of Bank.

Upon the trial of two of the indictments in the Corporation Court of the city of Norfolk, the court struck the evidence in one, and the jury found the defendant not guilty in the other. The attorney for the Bank testified that one of the indictments tried was for the theft of $9,000.00, the third indictment above-mentioned, and the other involved the automobile alleged to belong to City Ambulance Service, Inc., the second indictment above-mentioned. Thereafter, the Corporation Court, on motion of the Commonwealth's Attorney, entered a *nolle prosequi* as to each of the remaining nine indictments.

Declaratory judgments are creatures of statutes enacted to increase

the usefulness of the courts, and to remove doubt and uncertainty as to the final result of actual controversies when certain conditions arise. Code, § 8-578 specifically enumerates the character of controversies cognizable, and further provides that the "enumeration does not exclude other instances of actual antagonistic assertion and denial of right."

Code, § 8-583 provides that: "The mere pendency of any action or suit brought merely to obtain a declaration of rights of a determination of a question of construction shall not be sufficient grounds for the granting of any injunction."

Code, § 8-585 provides that the act shall be "liberally interpreted and administered with a view to making the courts more serviceable to the people."

Declaratory judgments "are intended to supplement rather than to supersede ordinary causes of action and to relieve litigants of the common law rule that no declaration of rights may be judicially adjudged until a right has been violated. Preventive relief is the moving purpose. Whether or not jurisdiction shall be taken is within the sound discretion of the trial court. Something more than an 'actual controversy' is necessary. In common cases where a right has matured or a wrong has been suffered, customary processes of the court, where they are ample and adequate, should be adopted." *American Nat. Bk.* v. *Kushner*, 162 Va. 378, 386, 174 S. E. 777; 16 Am. Jur., Declaratory Judgments, § 7, page 280; 26 C. J. S., Declaratory Judgments, § 8, pages 60 *et seq.* and § 19, pages 87 *et seq.*; 11 Michie Jur., Judgments and Decrees, § 218, pages 277 *et seq.* and § 221, page 279. Cf. *Jones Transfer Co.* v. *Commonwealth*, 174 Va. 184, 194, 5 S. E. 2d 628.

"The declaratory judgment acts do not create or change any substantive rights, or bring into being or modify any relationships, or alter the character of controversies, which are the subject of judicial power, * * *." 26 C. J. S., Declaratory Judgments, § 7, pages 59, 60. Their construction, while liberal, must be reasonable and confined within definite limits. They are not to be used as instruments of procedural fencing, either to secure delay or to choose a forum. 26 C. J. S., Declaratory Judgments, § 9, page 66.

Quoting from *Patterson's Ex'rs* v. *Patterson*, 144 Va. 113, 131 S. E. 217, we said in *Chick* v. *MacBain*, 157 Va. 60, 66, 160 S. E. 214:

"The test of the applicability of the statute is the determination of the existence of an actual controversy. The manifest intention of the legislature, as expressed in sections 6140a-6140h of the Code, was

to provide for a speedy determination of actual controversies between citizens, and to prune, as far as is consonant with right and justice, the dead wood attached to the common law rule of 'injury before action' and a multitude of suits to establish a single right."

The fact that multiplicity of actions may be avoided if a declaratory judgment be granted is not always a ground for assuming jurisdiction. There must be some real necessity for the exercise of jurisdiction on such ground. It must be made to appear that there is no adequate remedy at law as practical and effective to attain the ends of justice, as may be accomplished in a court of equity, and that the questions of law and fact involved are common to each of the several actions. 26 C. J. S., Declaratory Judgments, § 13, pages 77, 78.

"Where a declaratory judgment as to a disputed fact would be determinative of issues, rather than a construction of definite stated rights, status, and other relations, commonly expressed in written instruments, the case is not one for declaratory judgment." 16 Am. Jur., Declaratory Judgments, § 20, pages 294, 295.

The petition of Bank does not ask for the construction of definite rights expressed in written instruments or statutes. It alleges no controversy between the parties as to the right of Bank to make a defense at law, based on the facts stated therein, to the threatened tort actions. The answer of appellant challenges the verity of the allegations of fact. The only controversy is, therefore, one of disputed fact, that is, whether Bank made a full, correct and honest disclosure of all the material facts within its knowledge to its counsel and the Commonwealth's Attorney. The determination of that issue rather than an adjudication of the rights of the parties was the real object of the proceeding, as shown by the allegations of the petition, the prayer thereof, and the conclusion reached by the chancellor.

Bank has asked the chancellor to consolidate eleven prospective actions to establish separate torts into one proceeding and to make one determination apply to all of the eleven tort actions. While a common defense is alleged as to such actions, it does not necessarily appear that the facts involved are or may be common to each action. The procedure adopted by Bank prevents appellant from going on the offensive and puts him on defense. It allows Bank to choose its own forum and position upon the trial of the cause. It goes beyond the purpose and limitations of the declaratory judgments statute. It destroys the distinction between law and equity. It seeks to prevent the trial of each of appellant's prospective actions at law on its own merits by a jury, a right he long has had. In Virginia, we give high

respect to Section 11 of our Constitution, which provides that, "in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred."

Moreover, the petition of Bank is a pure bill for an injunction. It asks the chancellor to try a disputed question of fact as a determinative issue, and to substitute a suit in equity for several actions at law, although it alleges that it has an absolute defense in each action, pleadable at law. Cf. *Hendricks* v. *Compton's Ex'or*, 2 Rob. (41 Va.) 192.

In *Belcher* v. *Davis*, 203 Va. 38, 41, 121 S. E. 2d 760, we approved the following statement from 10 Michie's Jur., Injunctions, § 22, page 27:

"And it is well settled that a court of equity will interfere by injunction either pending an action or after judgment, where there is a distinct defense against the claim asserted at law which is solely cognizable in equity. Conversely, the court will not enjoin the prosecution of an action at law when the defendant can make a full and adequate defense in such action. A suit at law cannot be enjoined and the litigation transferred to the equity forum merely on the assertion of defenses that are pleadable at law. An action at law will not be enjoined except where a court of chancery may afford a more adequate and perfect remedy.'" *Connell* v. *Yost*, 62 W. Va. 66, 57 S. E. 299; *Gas Co.* v. *Swanson*, 117 W. Va. 763, 188 S. E. 235; *Virginia Mining Co.* v. *Wilkinson*, 92 Va. 98, 22 S. E. 839; Beach, Modern Equity, § 640, page 713; Barton's Chancery Practice, 3rd ed., Vol. 1, page 604.

For the foregoing reasons, we are of opinion that the temporary injunction should not have been granted, and that the decree perpetuating it is erroneous and ought to be reversed. The injunction is dissolved, and the petition dismissed, with costs to appellant.

*Reversed and final decree.*