COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


LISA MILLER

v.      Record No. 2405-08-4

JANET JENKINS

OPINION BY
JUDGE ROBERT J. HUMPHREYS
JUNE 23, 2009


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
John R. Prosser, Judge

Matthew D. Staver (Rena M. Lindevaldsen; Liberty Counsel, on
briefs), for appellant.

Gregory R. Nevins (Rebecca K. Glenberg; Lambda Legal Defense
& Education Fund, Inc.; American Civil Liberties Union of
Virginia Foundation, Inc., on brief), for appellee.


Lisa Miller ("Miller") appeals the dismissal of her action for declaratory judgment and

injunctive relief. For the following reasons, we do not address Miller's arguments because we

hold that the circuit court did not have jurisdiction to entertain an action for declaratory judgment

in this case.

I.  BACKGROUND

During the late 1990's and up until 2002, Miller and Janet Jenkins ("Jenkins") lived

together in Virginia. On December 19, 2000, Miller and Jenkins traveled to Vermont and

entered into a civil union pursuant to the laws of Vermont. Some time thereafter, Miller and

Jenkins decided that Miller would undergo artificial insemination and bear a child. In April

2002, Miller gave birth to I.M.J. In July 2002, Miller, Jenkins, and I.M.J. moved to Vermont.

They lived there together until September 2003, when Miller and I.M.J. moved back to Virginia.

Jenkins remained in Vermont.

In November 2003, Miller filed a "Complaint for Civil Union Dissolution" in Vermont. In the complaint, Miller listed I.M.J. as the "biological or adoptive child[] of the civil union." Miller also asked the Vermont court to award her legal and physical "rights and responsibilities" for I.M.J., to award reasonable visitation rights to Jenkins, and to "award payment of suitable child support money." On June 17, 2004, a Vermont court entered a temporary order awarding Miller custody of I.M.J. and awarding visitation to Jenkins. Since that time, Vermont courts have issued multiple custody orders regarding I.M.J. and have dissolved the couple's civil union.

The case before us represents Miller's third attempt to collaterally attack the Vermont court custody orders. Her first appeal was unsuccessful because it was she who brought suit in Vermont in the first instance and thereby submitted herself to the jurisdiction of that state. A panel of this Court dismissed Miller's appeal because, pursuant to the Parental Kidnapping and Protection Act (PKPA), 28 U.S.C. § 1738A, Vermont had sole jurisdiction over the issues of custody and visitation. See Miller-Jenkins v. Miller-Jenkins, 49 Va. App. 88, 637 S.E.2d 330 (2006). Miller's second attempt to attack the Vermont custody and visitation order was unsuccessful based upon the "law of the case" doctrine and the *res judicata* effect of her first appeal. The Supreme Court of Virginia held that this Court's decision in the previous appeal was the "law of the case" and that it required Virginia to register the Vermont orders and give them full faith and credit. See Miller-Jenkins v. Miller-Jenkins, 276 Va. 19, 661 S.E.2d 822 (2008).

Following the Supreme Court's decision in her second appeal, Miller filed a complaint in the Circuit Court of the City of Winchester asking the court for declaratory relief and an injunction. Miller sought to have the court issue temporary and permanent injunctions, enjoining Jenkins "from registering and attempting to enforce in Virginia, the Vermont Temporary Order,

the June 2007 Vermont Final Order concerning parental rights and responsibilities, and any subsequent modifications thereto."

Jenkins filed a demurrer, claiming that the Court of Appeals and Virginia Supreme Court had already addressed all of the issues raised by Miller in her complaint. The trial court held a hearing on Jenkins' demurrer. The court ultimately sustained the demurrer, holding that, "The issues raised in [Miller's] Complaint have all previously been litigated between [Miller] and [Jenkins] and decided by the Court of Appeals of Virginia and Supreme Court of Virginia." The court dismissed Miller's complaint with prejudice.

Contemporaneously with the hearing on Jenkins' demurrer, the circuit court addressed a separate pleading filed by Jenkins to "register and enforce the Vermont orders." Jenkins asked the circuit court to order the juvenile and domestic relations district court ("the J&DR court") to register the orders and asked the circuit court to enforce the Vermont orders by ordering Miller to comply with them. At the hearing, the circuit court remanded the matter brought by Jenkins regarding the Vermont orders to the J&DR court for consideration.[1] At oral argument on this case, Miller's attorney conceded that the issues in the two cases are "essentially the same."

## II.  ANALYSIS

Miller, once again, seeks to sidestep her prior submission to the jurisdiction of the courts of Vermont and the decisions already rendered there and in this Commonwealth regarding the custody of her child. She supports her petition by asserting the significant public policy differences between the Commonwealth and Vermont regarding the status to be accorded to same sex unions. In pursuing this course, Miller raises three arguments on appeal, all of which relate to the degree to which the Commonwealth owes recognition to the Vermont orders under

---

[1] At oral argument in this matter, counsel for both parties represented to this panel that Jenkins' case has since proceeded from the J&DR court, through the circuit court, and a further appeal to this Court is being contemplated.

the Full Faith and Credit Clause, U.S. Const., art. IV, § 1, the PKPA, or the Defense of Marriage Act, 28 U.S.C. § 1738C ("DOMA"). However, Jenkins makes several jurisdictional claims that we must address first.

Jenkins' first jurisdictional claim attacks our jurisdiction to hear this case under Code § 17.1-405. Code § 17.1-405 provides that we have appellate jurisdiction over:

> 3. Any final judgment, order, or decree of a circuit court involving:
>
> > a. Affirmance or annulment of a marriage;
> >
> > b. Divorce;
> >
> > c. Custody;
> >
> > d. Spousal or child support;
> >
> > e. The control or disposition of a child;
> >
> > f. Any other domestic relations matter arising under Title 16.1 or Title 20.

Jenkins argues that, although Code § 17.1-405 gives us jurisdiction over appeals involving custody, that jurisdiction extends only to custody cases "arising under Title 16.1 or Title 20." Code § 17.1-405. She reasons that, because this case involves a suit for a declaratory judgment pursuant to the Declaratory Judgment Act, Code § 8.01-184, *et seq*., the language "Any other domestic relations matter arising under Title 16.1 or Title 20," limits our jurisdiction to custody disputes arising under those titles. We disagree.

Our jurisdiction over the subject areas enumerated by Code § 17.1-405 is not limited to actions arising out of Title 16.1 or Title 20. In <u>Bullis v. Bullis</u>, 22 Va. App. 24, 467 S.E.2d 830 (1996), we held that an independent action instituted pursuant to Code § 8.01-428 to set aside a final decree of divorce is within this Court's appellate jurisdiction, even though the action arose out of Code § 8.01-428 rather than Title 16.1 or Title 20. We explained that "[b]ecause the underlying cause in this case is a decree involving a divorce . . . this Court has jurisdiction to

review the final judgment." Id. at 31, 467 S.E.2d at 834. Likewise, despite the fact that Miller brought this suit under the declaratory judgment act, we hold that we have jurisdiction over this appeal because the underlying cause is a custody dispute. See also, Khanna v. Khanna, 18 Va. App. 356, 357 n.1, 443 S.E.2d 924, 925 n.1 (1994).

Next, Jenkins argues that it was improper for the circuit court to exercise its jurisdiction to entertain Miller's declaratory judgment action. Jenkins argues that declaratory judgment is inappropriate because other remedies are available to Miller.

"Under the Declaratory Judgment Act, Code §§ 8.01-184 through -191, circuit courts have the authority to make 'binding adjudications of right' in cases of 'actual controversy' when there is 'antagonistic assertion and denial of right.'" USAA Cas. Ins. Co. v. Randolph, 255 Va. 342, 345, 497 S.E.2d 744, 746 (1998) (quoting Code § 8.01-184). "The Declaratory Judgment Act does not give trial courts the authority to render advisory opinions, to decide moot questions, or to answer inquiries that are merely speculative." Id. at 346, 497 S.E.2d at 746.

> The intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature. In other words, the intent of the act is to have courts render declaratory judgments which may guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights, which action, without direction, would jeopardize their interests. This is with a view rather to avoid litigation than in aid of it.
>
> . . . [T]he power to make a declaratory judgment is a discretionary one and must be exercised with care and caution. *It will not as a rule be exercised where some other mode of proceeding is provided.*

Liberty Mut. Ins. Co. v. Bishop, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970) (emphasis added).

In Randolph, our Supreme Court addressed the appropriateness of declaratory judgment where other remedies are available. In that case, Randolph was accidentally shot while at work.

- 5 -

Randolph filed a suit asking the court to declare that his injury *did not* arise out of his employment, which would allow him to pursue a tort action rather than seeking redress under the Workers' Compensation Act.  The Supreme Court held that an action for declaratory judgment was inappropriate because Randolph's "case involves claims and rights that had accrued and matured when the bill of complaint was filed."  Randolph, 255 Va. at 347, 497 S.E.2d at 747. The Court explained, "declaratory judgment did not lie because other remedies were available to Randolph, namely, a claim for workers' compensation benefits or an action at law."  Id.

Like Randolph, Miller has remedies available to her aside from declaratory judgment. The future harm alleged by Miller is that Jenkins will seek to register and enforce the Vermont custody orders.  However, as noted above, Jenkins is already attempting to do so.  The wrong that Miller alleges has already been suffered.  In the very same hearing in which the circuit court addressed Miller's claim for declaratory judgment, the circuit court also heard argument on Jenkins' separate request to register and enforce the Vermont orders.  Miller objected, arguing that Virginia may not either register or enforce the Vermont orders.  According to Miller's reply brief and the representations of her counsel at oral argument, the litigation involving Jenkins' petition to register and enforce the Vermont orders continues to this day and Miller is continuing to oppose Jenkins' request *on the same grounds on which she seeks declaratory relief.*[2]

Declaratory judgment "will not as a rule be exercised where some other mode of proceeding is provided."  Bishop, 211 Va. at 421, 177 S.E.2d at 524.  Declaratory judgment does not lie in this case because Miller has other remedies available to her – opposing Jenkins' motion to register and enforce – and is, in fact, pursuing those remedies.  Because declaratory judgment

---

[2] At oral argument, Miller agreed that the issues in the two cases are "the same."

does not lie in this case, the circuit court had no jurisdiction to entertain Miller's claim and, therefore, properly dismissed it.[3]

The same is true of Miller's claim for injunctive relief. Courts "'will not enjoin the prosecution of an action at law when the defendant can make a full and adequate defense in such action. A suit at law cannot be enjoined and the litigation transferred to the equity forum merely on the assertion of defenses that are pleadable at law.'" Williams v. Southern Bank of Norfolk, 203 Va. 657, 664, 125 S.E.2d 803, 808 (1962) (quoting Belcher v. Davis, 203 Va. 38, 41, 121 S.E.2d 760, 762-63 (1961)). As discussed above, Miller is not without an adequate remedy at law. She can and is defending against Jenkins' motion to register and enforce the custody orders. All of the claims that Miller raises in this case are available in the case filed by Jenkins. Thus, the trial court properly dismissed Miller's claim for an injunction as well.

For the foregoing reasons, we hold that the circuit court did not have jurisdiction to issue a declaratory judgment in this case, and we affirm its dismissal of Miller's complaint.

Affirmed.

---

[3] Given our holding that the trial court correctly determined that a declaratory judgment was not appropriate in this case, we need not and do not consider Jenkins' remaining procedural argument that the "law of the case" controls the outcome of this appeal. Likewise, we need not and do not consider the merits of Jenkins' arguments with respect to whether Congress, in enacting DOMA, intended to permit the several states to restrict the application of the PKPA with respect to custody and visitation of the progeny of same sex unions.